Chas. Ind Co., an Illinois Corporation, Plaintiff-Appellant, v. Cecil B. Wood, Inc., an Illinois Corporation, Defendant-Appellee.

Gen. No. 64-22.

Second District.

February 16, 1965.

Supplemental opinion, April 9, 1965.

Rehearing denied, April 9, 1965.

Maynard & Maynard, of Rockford (James F. Maynard, of counsel), for appellant.

Reno, Zahm, Folgate & Skolrood, of Rockford (Robert K. Skolrood, of counsel), for appellee.

DAVIS, J.

Plaintiff, Chas. Ind Co., herein called Ind, appeals from an adverse judgment of the trial court in its suit for indemnity or action over against the defendant, Cecil B. Wood, Inc., herein called Wood. The matter was heard by the court without a jury. Ind was the general contractor for certain road construction work for the City of Rockford. Wood was one of Ind's subcontractors. During the course of the construction, Phillip Neil Burger, herein called Burger, and a pas-

senger in his car were injured at the site of this construction. Burger and his passenger sued Ind, Wood and the City of Rockford for their injuries. A jury found Wood and the City of Rockford not guilty but returned a verdict against Ind for $12,665 and costs. Judgment was entered thereon, and Ind elected not to appeal and satisfied the judgment in full. This suit followed.

Ind here contends that it is entitled to indemnity as a matter of law against its subcontractor, Wood, in that Wood was guilty of active negligence, and that it, Ind, was guilty of only passive negligence. Ind further contends that the judgment of the trial court was contrary to the manifest weight of the evidence. Wood, in addition to denying the foregoing, contends that, by reason of the finding of the jury in the Burger case, it was not guilty of negligence, and that Ind is now estopped by such verdict from recovering against it.

In view of the contentions raised, it is necessary to review the facts giving rise to this litigation. On August 15, 1958, Ind entered into a contract with the City of Rockford to act as the general contractor for altering and improving the intersection of Sixth, State and Charles Streets in the City of Rockford. Among other things, the contract called for the construction of certain traffic islands to house traffic signals with direction controls, and to act as traffic dividers. Ind sublet the electrical work, which included the installation of traffic signals and the construction of concrete bases to support these signals, to Wood.

Ind's contract with the city provided that "The contractor shall furnish, place, and maintain, at its own expense, the necessary barricades, signs, and flares, to protect the work and the public." Both Ind and Wood were aware of this provision in Ind's con-

tract. The particular island with which we are here concerned was about 60 feet in length. Both Ind and Wood worked on this island, Wood doing the electrical work referred to above, and Ind doing the balance of the work. On occasions, Ind and Wood were working on the island at approximately the same time. Ind constructed the six-inch curb surrounding the island and filled the center area of the island with six inches of crushed stone and completed this portion of the work about a week or ten days prior to November 7, 1958. Ind had yet to blacktop the island and did not complete this portion of the work until sometime in 1959.

Wood started its part of the job on this island in October, 1958. Its job consisted of connecting the electrical service to the traffic signal base, excavating for and constructing the concrete base, and installing the traffic signal. The concrete base was at the extreme easterly end of the island. It was approximately two feet square, extended two feet above, and approximately five feet below, the ground. The electrical service was connected and the concrete base was completed by October 20, 1958. At that time, the traffic signals had not yet been delivered to Wood for installation, and it removed its men from the job. These signals were not received by Wood until late November or early December.

During the month of October, while Wood was working on the island, it had both barricades and flares around the signal base. Cecil Wood, president of defendant, testified that whenever defendant has an excavation or an obstruction, it barricades and flares it until the obstruction is removed or the excavation filled. Wood removed the barricades on October 20, 1958, when it completed the work on the base, but it continued to provide flares on the base until the evening of November 7, 1958. It appears that

34

Wood then stopped flaring the base as a result of a conversation on November 5th or 6th, which Cecil Wood had with the Chief Construction Inspector for the Engineering Department of the City of Rockford. Wood's testimony, which was denied by the City Inspector, was to the effect that the latter then said there was no longer any need for Wood to flare the base.

It is undisputed that Wood did not advise Ind that it was going to cease to flare the base. Likewise, there was apparently no discussion between Ind and Wood at anytime with respect to barricading or flaring the traffic signal base or the island. It does not appear that Ind at any time barricaded or flared the remainder of the island, or if it did, when it ceased to do so.

On the evening of November 7, 1958, Burger drove his car into the intersection in question from the west, striking the island with the left wheels of his car. Burger testified that his car struck the island curbing at a point fairly close to the concrete traffic signal base. A police officer investigating the accident testified that Burger's car struck the island at a point near the westerly end and that the left wheels of the car travelled approximately 58 feet along the crushed stone on the island before hitting the concrete traffic signal base. Burger did not recall whether or not he lost control of his car when it struck the island curbing. His car ultimately struck the concrete traffic signal base, turned over, and caused the injuries later complained of.

The defendant, Wood, moved to dismiss the complaint in this action on the ground that the jury's verdict in the Burger case, finding Wood not guilty of negligence, estopped Ind from now asserting that Wood could be guilty of active negligence. The trial court denied the motion and later struck the affirm-

ative defenses based on the same grounds. The parties then stipulated that the transcript of the testimony in the Burger case be admitted as the evidence in the instant case, after which the court found the issues in favor of the defendant.

██ The threshold question raised by defendant is the applicability of the doctrine of estoppel by verdict. If a former judgment is raised as a complete bar against a second action, both as to those matters actually adjudicated in the first action and as to those matters which could have been raised therein, there must be, as between the actions, identity of parties, of subject matter and of cause of action. This is referred to as the doctrine of res judicata and is sometimes called estoppel by judgment. Where, as here, the parties are the same and the same subject matter is the basis for the action, but the claim or cause of action is different, the prior decision operates as an estoppel only as to those matters in issue or points controverted and is only conclusive as to those questions actually raised and determined therein. Smith v. Bishop, 26 Ill2d 434, 436, 437, 187 NE2d 217 (1962); Hoffman v. Hoffman, 330 Ill 413, 417, 161 NE 723 (1928). This is often called estoppel by verdict, the question here presented; it is but another branch of the doctrine of res judicata.

██ One of the prerequisites to the application of the doctrine of estoppel by verdict is that the precise fact or question asserted as having been determined and giving rise to the estoppel *again* be at issue. This presupposes that the fact in issue has already been litigated in the first suit, and the party whom the estoppel is to affect or against whom the estoppel is asserted must have contested this issue in the first suit. The reason for the rule is apparent. If an adverse finding on a fact is to prevent a litigant from asserting another right, he must have had an opportu-

nity for full hearing and must have actually contested this fact when the finding was made. The obvious case for application of the doctrine is where one found guilty of negligence in a first suit, or one standing in substantially the same relationship, thereafter files a suit wherein he must prove his freedom from contributory negligence. Franciscy v. Jordan, 43 Ill App 2d 344, 193 NE2d 219 (2d Dist. 1963); Stangle v. Chicago, R. I. & P. R. Co., 295 F2d 789 (CA 7, 1961). In such a case the pleadings alone may establish that the controlling issue was necessarily raised in the first suit and that the party affected by the determination necessarily tried to prove the opposite of the ultimate determination.

 The rule is not so easily applied where, as here, the present parties were coparties in the prior litigation and the pleadings in such litigation are not before the Court. However, the fact that difficulty may arise in employing the doctrine of estoppel by verdict in a case such as that before the Court, does not bar its application. Rose v. Dolejs, 7 Ill App2d 267, 274, 129 NE2d 281 (2d Dist. 1955); Franciscy v. Jordan, supra; Lawler v. Schilling, 249 Ill App 290, 292, (4th Dist. 1928). In such a case, whether estoppel by verdict has any application depends on whether or not the parties were adversaries as to the fact or issue determined, either by the pleadings or in fact. If the parties were not adversaries by the pleadings, it must then appear by the record of the prior suit that they were adversaries in fact as to the particular matter determined and raised as a bar. Jones v. Koepke, 387 Ill 97, 106, 107, 55 NE2d 154 (1944); Stangle v. Chicago, R. I. & P. R. Co., 295 F2d 789 (CA 7, 1961).

In the Case of Palkey v. Donichy, 18 Ill App2d 356 (1st Dist. 1958), at page 364, 152 NE2d 494, the Court elaborated on the determination of whether an

issue has been raised and considered in a prior proceeding, in these words:

"In determining whether an issue has been raised and considered in a prior proceeding reference may be had to 'pleadings, testimony, jury instructions, findings, verdicts, and any other pertinent sources of information sensibly helpful to the inquiry.' 'Res Judicata Reexamined,' Cleary, 57 Yale Law Journal, 339, 342. Harman v. Auditor of Public Accounts, 123 Ill 222."

 This determination does not depend upon technicalities but on broad principles of justice, and it can apply only when the party has had his day in Court and full opportunity to establish his claim. Voorhees v. Chicago & A. R. Co., 208 Ill App 86, 95 (3d Dist. 1917). The doctrine is based upon the principle that while every man is entitled to his day in court and full opportunity to sustain his position on the issues of fact involved, he is not given the right to litigate a matter twice. "It is of first importance both in the observance of private rights and the public good that a question once adjudicated by a court of competent jurisdiction shall be considered as finally settled and conclusive on the parties, subject only to proceedings in a court of review." Winkelman v. Winkelman, 310 Ill 568, 573, 142 NE 173 (1924).

An examination of the entire record in this case leaves no doubt that the plaintiffs in the first suit earnestly sought to impose liability on the three defendants; they certainly attempted to prove Wood negligent in removing the flares from the concrete traffic signal base. There further is no doubt that Ind, in conducting its defense, actively sought to establish the negligence of Wood. In the direct examination of Charles Ind, President of Ind, and the cross examination of Cecil Wood, President of Wood, Ind's counsel,

being the same in the original trial and in this proceeding, vigorously sought to establish that at the time in question, Ind was through working on the particular island; that Wood yet had work to do on the island; that Wood had previously flared the concrete base and then stopped flaring the base without any notice to Ind; and that Wood had complete control and authority over its part of the work.

■ ■ The parties here do not dispute that if Ind were guilty only of technical or passive negligence by virtue of the active negligence of Wood imputed to it, Ind would then have a right to indemnity against Wood. But just as certainly, Ind cannot prevail upon this theory unless Wood is first found guilty of negligence. It is an essential part of the jury's verdict in the first case that Wood was found to have been guilty of no negligence giving rise to plaintiffs' injuries. Ind, having, in fact, actively sought in the first suit to establish responsibility upon Wood for the injuries complained of there, is now estopped from again asserting that it was the negligence of Wood which caused these injuries. The jury's verdict has settled that matter. Ind did not appeal that judgment imposing liability solely on it, although it here suggests not only that the finding of no negligence on the part of Wood is contrary to the manifest weight of the evidence, but also that a contrary finding should have been made as a matter of law. Having once litigated that question, and having failed to appeal an adverse decision, Ind may not now seek a second day in court in the form of this action to relitigate the same question.

■ When, as in this case, a prior judgment was pleaded in bar of a later action, the general rule on the principle of res judicata is that "a judgment rendered by a court having jurisdiction of the parties and subject matter is conclusive and indisputable evidence

39

as to all facts or questions in issue in the action and actually determined therein, when the same fact or question is again put in issue between the same parties or their privies, even though the subsequent proceedings are on a different cause of action. 23 ILP Judgments, Sec 377; City of Elmhurst v. Kegerris, 392 Ill 195, 64 NE2d 450; Hoffman v. Hoffman, 330 Ill 413; O'Brien v. O'Brien, 311 Ill App 435; 30 Am Jur, Judgments, Sec 324, 371, 375, 376." Champion v. Champion, 20 Ill App2d 271, 275, 156 NE2d 16 (2d Dist 1959). Consequently, the plaintiff's contention that the finding of the trial Court was contrary to the manifest weight of the evidence, is untenable.

Ind asserts that Chicago Railways Co. v. R. F. Conway Co., 219 Ill App 220 (1920) and Sherman House Hotel Co. v. Butler St. Foundry & Iron Co., 168 Ill App 549 (1912) dictate a contrary conclusion. Ind states that these cases hold that where one of two codefendants is found guilty of negligence and the other not, the former has a right of action for indemnity and the former judgments are not res judicata where the codefendants were not adversary parties and did not litigate their rights inter se. However, the Chicago Railways Co. case does not support its contention. Contrary to the assertion made in Ind's brief, both defendants were found guilty of negligence in that case. Of course, no question of estoppel by verdict then has any application. In the Sherman House case, the Court there carefully distinguishes, on page 553, a case where a prior judgment in favor of one codefendant was held to be res judicata when he was later sued by the other codefendant, who by course of conduct at the former trial endeavored to show that the first codefendant was liable and the first defendant endeavored to show that he was not. The Court in the Sherman House case pointed out that no such questions were put in issue between the defendants there by the

pleadings, testimony or otherwise. In the case at bar, the record shows that the codefendants were in fact adverse parties, and consequently, a different rule prevails than that suggested by plaintiff here.

For the reasons above set forth, the judgment of the Circuit Court of the 17th Judicial Circuit, Winnebago County, is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF PETITION FOR REHEARING

Plaintiff, in its petition for rehearing, vigorously contends that the Court misapprehended "(1) the far reaching legal effect of the holding which allows a judgment to be raised as a bar, from which judgment the party barred had no right of appeal, and (2) the facts and holdings in Sherman House Hotel Co. v. Butler St. Foundary & Iron Co., supra."

We do not accept plaintiff's assumption that Ind has no right of appeal from the original judgment wherein the jury returned a verdict against it in the sum of $12,665, and a not guilty verdict as to the City and Wood. In the case of Greenman v. Harvey, 53 Ill 386, 390 (1870) the Court stated:

> "But it is urged, that as the minor does not appeal, and as there are no errors committed against appellants, they cannot assign errors committed against the minor. One defendant, as a general rule, cannot assign errors committed against a codefendant, but the rule is subject to the limitation, that it is only in cases where the rights of appellant are not affected by the error. In this case, appellants are the purchasers, and the minor and

41

■■■■■■■■■

her co-tenant in common, hold the legal title, and the property is subject to dower. It is, therefore, a matter of importance to appellants that the question of dower be definitely settled before they complete their purchase and receive their deed. . . . It is only where we can see that the interests of a plaintiff in error are not, or can not be affected by errors committed against a co-defendant, that he will not be permitted to rely upon them for a reversal."

This subject received further consideration in People v. Estate of Harrigan, 294 Ill 171, at pages 173 and 174, 128 NE 334, the Court stated:

"The order of the circuit court dismissing the appeal amounted to an affirmation of the order of the probate court awarding the claim of the county. According to the allegations in their assignment of errors, plaintiffs in error are entitled, as legatees under the will of their deceased brother, to all of his property that remains after the payment of his debts. If any unjust or illegal claims are allowed against the estate of Michael Harrigan plaintiffs in error would be damaged to that extent. They would be benefited by a reversal of the judgment of the circuit court, and they are therefore entitled to sue out this writ of error to review that judgment."

Also see White Brass Castings Co. v. Union Metal Mfg. Co., 232 Ill 165, 167, 83 NE 540 (1908); Sullivan v. Harris Trust & Savings Bank, 8 Ill App2d 397, 407, 132 NE2d 69 (1st Dist. 1956); Krause v. White, 341 Ill App 322, 332, 93 NE2d 429 (2d Dist. 1950).

In Corn v. Greenberg, 181 Ill App 669 (1st Dist. 1913), the court in discussing this subject, with respect to the similar predecessor section of the Practice Act governing appeals, stated at page 671:

"So far as we are aware, it has never been denied that section 91 gives to all the parties to the suit, whose interests have been prejudicially affected by a final judgment, order or decree the right to appeal."

■ Appeals are statutory in nature and are limited to those authorized, but where doubt exists as to the right of appeal, such question should be resolved in favor of the appellant. 4 CJS (Appeal & Error) par 167, page 539.

Section 74 of the Civil Practice Act (Ill Rev Stats 1963, c 110, par 74) prescribes the method of review in Illinois. Subject to special types of statutory review, subsection (1) makes the notice of appeal applicable to civil proceedings. The changes in subsections (1) and (2) are of form only, and otherwise the appellate procedure under predecessor statutes remains unchanged. Subsection 3 is new, and substitutes notice of appeal for writ of error as the method to obtain review by the Supreme Court of any judgment of the Appellate Court, in any civil case in which a constitutional question arises for the first time as a result of action of the Appellate Court, and upon certification by a division of the Appellate Court that a case decided by it involves such importance that it should be decided by the Supreme Court. (Constitution of Illinois 1870, art 6, sec 5.) Thus, the prior decisions, relating to persons formerly authorized to sue out a writ of error, are applicable to persons now filing notice of appeal.

Section 81 of the Civil Practice Act also provides that notice of appeal shall replace the old writ of error procedure in all cases where a judgment is rendered against two or more persons, and states that one or more of said persons may appeal and use the name of all parties to the proceeding. Section 50(2) provides for appeal in cases involving multiple parties

or multiple claims, where the Court enters an order final as to one, but fewer than all, of such parties or claims. Sections 101.22 and 101.35 provide for the form and content of Notice of Appeal, and for Notice of Appearance, Cross Appeal and Separate Appeal by a Co-Party. Thus, Illinois practice and procedure, as well as substantive law, contemplates broad appeal rights in persons qualified to appeal.

■■■ In order to entitle a person to file notice of appeal to review a judgment, order or decree, the appellant must be a party or privy to the record, or one who is injured by the judgment, or who will be benefited by its reversal, or who is competent to release errors. People v. Whealan, 353 Ill 500, 503, 187 NE 491 (1926); Leland v. Leland, 319 Ill 426, 428, 429, 150 NE 270 (1926); People v. Estate of Harrigan, 294 Ill 171, 173, 174, 128 NE 334 (1920); People v. Lower, 254 Ill 306, 314, 98 NE 557 (1912); Griggsville State Bank v. Newman, 275 Ill App 11, 14 (3d Dist. 1934), Mosier v. Flanner-Miller Lumber Co., 66 Ill App 630, 634 (1st Dist. 1896).

■■■ In the light of the foregoing authorities, we believe that Ind had a right to appeal not only from the judgment against it, but also from the judgment in favor of Wood, since he would be injured in his claim for contribution against Wood by virtue of said judgment.

The only pertinent authority cited by Ind to sustain his first contention is Bakula v. Schwab, 167 Wis 546, 168 NW 378 (1918), and it was there held that "an element essential to constitute res adjudicata is the right of appeal from a judgment," and that such right was denied to appellant under the circumstances of the case. However, Bakula was modified in Wait v. Pierce, 191 Wis 202, 210 NW 822 (1926), and at page 825 the Court stated: "So far as the Bakula case holds that, where one joint tort-feasor discharges more than his

equitable share of a liability resting upon him and another joint tort-feasor by a single judgment, the question of liability of the other joint tort-feasor to the plaintiff is not res judicata, it must, be and is, modified." Bakula was further repudiated in Schofield v. Rideout, 233 Wis 550, 290 NW 155 (1940). At page 157, the Court in referring to the holding in Bakula that an element essential to constitute res judicata is the right to appeal from the judgment, stated: "No authorities to the point stated are cited in the Bakula case, supra, nor do defendants cite any nor do we find any. But the contention of defendants need not rest on such a rule, and we do not hold that such is the rule."

Ind further urges that there is no sound distinction between the case at bar and Sherman House Hotel Co. v. Butler St. Foundry & Iron Co., supra. We disagree. In the action over, the Iron Co. urged the prior judgment wherein it was found not guilty of negligence, as res judicata. At pages 553 and 554, the Court analyzed and distinguished Kansas City v. Mitchener, 85 Mo App 36 in which the Court held that the judgment in the former suit was res judicata, from the Sherman House case, in these words:

"It appears from the opinion of the court that, when the former suit against Mitchener and the city, jointly, was on trial, 'the city by course of conduct at the trial endeavored to show that Mitchener was liable and he endeavored to show that he was not, while Mrs. Ryan endeavored to show that both of them were.' In other words, in the former trial in the Mitchener case, the court, presumably because of the state of the pleadings and the code practice obtaining in Missouri, allowed the question as to which of the defendants— the city or Mitchener—as between themselves, were liable to Mrs. Ryan, or whether both were

liable, to be litigated, and it found that the city alone was liable. In the former trial of this Gallagher case no such questions were in issue under the pleadings. The declaration in that case charged that both the hotel company and the iron company were liable *to Gallagher,* and it appears that on the trial of that case the iron company, at the conclusion of plaintiff's evidence, moved the trial court to take the case from the jury as to it, but that the court reserved its ruling thereon until the hotel company had put in its defense, and that when this had been done, and the hotel company had rested its case, the court sustained said motion of the iron company—the iron company having introduced no evidence,— and directed the jury to find the iron company not guilty. It, therefore, clearly appears that the question as to which one of the two defendants— the iron company or the hotel company—was liable for the injury, as between themselves, was not determined. The determination solely was that the hotel company was liable to Gallagher."

In the case at bar, as stated in the foregoing opinion, the plaintiffs in the original suit earnestly sought to impose liability on the defendants, Ind, Wood and the City. Ind, in conducting its defense, actively sought to establish the negligence of Wood and its freedom from negligence. Thus, in the original Sherman House case, the question of which of two defendants, as between themselves, was liable for the injury, was not determined; this question was determined by the testimony, and otherwise in the original Ind suit. This is the distinction between the case at bar and the Sherman House case: it is real.

■■■ In addition, section 25 of the Civil Practice Act (Ill Rev Stats 1963, c 110, par 25) now gives

Illinois a modern third-party practice similar to that prevailing in other jurisdictions, and under the Federal Rules. Its purpose is to curtail multiplicity of actions by providing for the assertion in one action of any claim, which, by reason of plaintiff's claim against one party defendant, such defendant has, or may have, against a third party. To further facilitate the determination of all claims arising out of the same transaction or occurrence, in one action, this section permits the third-party defendant to file a counter-claim or third-party complaint. The last sentence of subsection (2) states that the law of contribution is not changed by such procedural innovations. By use of such procedure, the entire controversy may be determined in one proceeding with its attendant savings in court time, attorney's fees and legal costs.

To facilitate the trial lawsuits where there is a joinder of causes of action and the use of counter-claims, section 44 of the Civil Practice Act (Ill Rev Stats 1963, c 110, par 44) vests discretion in the trial court to order separate trial of any causes of action, counterclaim or third-party claim, if it cannot be conveniently disposed of with the other issues of the case. The proper use of such procedures, would preclude questions of the type being here litigated.

For these reasons, we adhere to the opinion herein as originally adopted. We believe it to be sound. It will neither violate the well reasoned and established law of this State, nor leave in its wake the injustices which Ind suggests.

Petition for rehearing denied.

ABRAHAMSON, P. J. and MORAN, J., concur.