JOSEPH T. TISONCIK, Plaintiff-Appellee, *v.* LESLIE SZCZE-PANKIEWICZ, Indiv. and d/b/a B & L Cartage *et al.*, Defendants-Appellees.—(Ronald Biesboer, Indiv. and d/b/a Brites Cartage, Defendant-Appellant; Gallagher Asphalt Corp. *et al.*, Defendants.)

First District (2nd Division) No. 81—2207

Opinion filed March 15, 1983.

Jerome H. Torshen, Ltd., and Osterkamp, Jackson & Hollywood, both of Chicago (Jerome H. Torshen and Janet F. Gerske, of counsel), for appellant.

Beverly, Pause, Duffy & O'Malley, of Chicago (John J. O'Malley and Michael W. Rathsack, of counsel), for appellees Leslie Szczepankiewicz and Joseph J. Murdie.

Marshall E. LeSueur, of Chicago, for appellee Joseph T. Tisoncik.

PRESIDING JUSTICE DOWNING delivered the opinion of the court:[1]

Plaintiff, Joseph T. Tisoncik, brought this personal injury action against the owner-lessor, lessee and driver of a truck which collided with plaintiff's car. At the close of the evidence, the owner-lessor was granted a directed verdict in its favor and the driver was dismissed at

---

[1]On December 7, 1982, we entered an order disposing of the appeal under Supreme Court Rule 23. Defendant-appellant Brites filed a petition for rehearing. An answer by the other parties to said petition was received as was a reply. We have this date entered an order allowing the petition for rehearing and vacating our December 7, 1982, order. This opinion is issued as the result of the petition for rehearing.

plaintiff's request. The jury awarded plaintiff $156,652 against the lessee, Ronald Biesboer d/b/a Brites Cartage (Brites), the sole remaining defendant. Brites appeals from the jury verdict against it and from the dismissal of the codefendants lessor and the driver of the truck.

Brites raises the following issues on appeal: (1) whether the trial court erred in excluding evidence concerning plaintiff's prior injuries and his ability to practice dentistry after the accident; (2) whether the trial court erred in directing the verdict in favor of the owner-lessor; and (3) whether the trial court erred in allowing the driver to be dismissed at plaintiff's request.

Plaintiff, a 59-year-old dentist, was injured on June 15, 1979, when the car he was driving was hit by a vehicle. Defendant Leslie Szczepankiewicz, doing business as B & L Cartage (B & L), as owner, had leased the tractor and trailer involved in the accident for a three-year period to Brites. The vehicles were leased under an Illinois Commerce Commission (ICC) "Equipment Lease," which provided that the equipment "shall be under the exclusive and complete possession, use, and control of [l]essee." According to Interstate Commerce Commission requirements, the truck carried Brites' name and ICC number. B & L garaged and maintained the vehicles and provided the driver, Joseph Murdie. Murdie admitted at trial that on the day of the accident, he did not see the traffic signals at the intersection until he was about 25 feet from them. His truck hit plaintiff's car, causing plaintiff injuries for which he sought damages for pain and suffering, medical expenses and lost wages.

At the close of all the trial evidence, defendant B & L moved for a directed verdict which the trial court granted and dismissed B & L from the action. The driver, Murdie, was dismissed with prejudice upon plaintiff's request. The jury was given the instruction that Murdie was Brites' agent at the time of the occurrence and returned a $156,652 verdict for plaintiff.

I

Brites contends that the jury awarded plaintiff an excessive verdict as a result of the trial court improperly excluding: (a) evidence concerning a knee tap performed on plaintiff in 1969; and (b) photocopies of plaintiff's daily appointment books for 1979 and 1980.

A

A sizeable portion of plaintiff's medical expenses and time lost from his dental practice was attributable to the surgery and subse-

quent therapy of his right knee. Testimony at trial revealed that plaintiff had two problems with his right knee—a degenerative process that involved a softening of the tissue, and a torn meniscus. In 1969, 10 years prior to the accident, plaintiff banged his right knee on a chair and a knee tap was performed on him by a physician (a Dr. Keagy) who did not testify at trial. In 1971, plaintiff received injections in his right knee from the same physician. The trial court struck the evidence regarding the 1969 knee tap, but allowed evidence of the 1971 treatment.

Brites argues, therefore, that the prior condition of plaintiff's right knee was placed into issue. Evidence of a prior injury is admissible if a causal relationship between the injury is shown or when it involves the same area of the body. *Elberts v. Nussbaum Trucking, Inc.* (1981), 97 Ill. App. 3d 381, 384, 422 N.E.2d 1040.

Brites contends that it was error to exclude evidence of the knee tap because it prevented the jury from considering whether plaintiff's complaint was an aggravation of a preexisting condition. Plaintiff's treating surgeon testified extensively regarding the existence of the degenerative condition and admitted he had no way of knowing how long plaintiff had it or the torn meniscus prior to the 1980 surgery.

■ A review of the record reveals that striking of the evidence in question did not result in prejudice to defendant's theory of aggravation of a preexisting condition as it claims it did. The incident took place approximately 10 years before the current incident. There is no evidence in the record as to the nature, extent, duration or treatment of the 1969 incident, other than there was a single injection. Brites presented no offer of proof nor attempted to provide more explicit evidence.

B

■ Brites also claims that the trial court erroneously declined to admit defendant's exhibits Nos. 7 and 8, which were certified photocopies of plaintiff's daily appointment books for 1979 and daily logs for 1980. The justification advanced by Brites at trial for admitting the exhibits was that they impeached plaintiff's testimony regarding extractions that he performed after the accident. Brites was able to cross-examine plaintiff from the information contained in the exhibits, thus the jury was informed as to the nature of Brites' theory. Although the trial court did not allow the exhibits to go to the jury, any error in so ruling, in our opinion, was not prejudicial. A careful review of the record reveals that the trial court correctly refused to admit the records to the jury since they did not actually contain facts

which constituted impeaching evidence.

## II

Brites contends that the trial court erred in granting B & L's motion for a directed verdict and in allowing Murdie to be dismissed with prejudice at plaintiff's request.

The initial issue that must be resolved is whether Brites has standing to appeal the dismissal of its codefendants B & L and Murdie. The general rule in Illinois is that the only party who may appeal from a directed verdict in favor of a codefendant is the plaintiff. (*Montgomery v. Terminal R.R. Association* (1979), 73 Ill. App. 3d 650, 655, 392 N.E.2d 77.) The right to appeal exists only in favor of a party whose rights have been prejudiced by the judgment or decree appealed from. *Gordon v. Gordon* (1955), 6 Ill. 2d 572, 574, 129 N.E.2d 706; *Hotchkiss v. City of Calumet City* (1941), 377 Ill. 615, 617, 37 N.E.2d 332.

Brites argues that the potential *res judicata* effect of B & L's dismissal on a possible contribution action by Brites against B & L gives it standing to appeal. Brites relies on *Chas. Ind Co. v. Cecil B. Wood, Inc.* (1965), 56 Ill. App. 2d 30, 205 N.E.2d 786, where the court recognized that the appellant had a right to appeal from a judgment in favor of a codefendant because he would be injured in a claim for indemnity by the said judgment. (56 Ill. App. 2d 30, 44.) The court's acknowledgment of this standing to appeal was predicated, however, upon an express finding that the appellant had actively sought to determine the liability of its codefendant in the original action and that the jury verdict of finding the codefendant not guilty of negligence would act as a bar to the present action for indemnity. (56 Ill. App. 2d 30, 39.) In the instant case, B & L was dismissed by the trial court based upon its status as lessor under a common carrier lease. As between codefendants, a judgment for or against one of them does nothing but establish their respective rights and liabilities toward the plaintiff, unless the issues between the codefendants were actively litigated in the action. (*City of Burbank v. Glazer* (1979), 76 Ill. App. 3d 294, 298-99, 395 N.E.2d 97.) The issues relevant to contribution action were not resolved in the instant case, and thus Brites cannot claim that its interest was prejudiced by B & L's dismissal. We do not base our decision upon these grounds, however, but rather upon our interpretation of the enforcement section of "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1981, ch. 70, par. 305).

The right of one tortfeasor to recover contribution from other

joint tortfeasors was first recognized by our Illinois Supreme Court in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437. The legislature responded to this decision and enacted "An Act in relation to contribution among joint tortfeasors" (Act), which was effective September 14, 1979, and covered causes of action arising on or after March 1, 1978. (Ill. Rev. Stat. 1981, ch. 70, par. 301.) The *Skinner* court recognized the injustice of the former no-contribution rule which " '*** permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone ***.' " *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 13, quoting Prosser, Torts sec. 50, at 307 (4th ed. 1971).

Section 5 of the Act is the enforcement section and provides:

"A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action." (Ill. Rev. Stat. 1981, ch. 70, par. 305.)

We have found no Illinois case to date which interprets the meaning of this section. In construing a statute provision not yet judicially interpreted, a court is guided by both the plain meaning of the language in the statute as well as legislative intent. (*Janowski v. Teamsters Local No. 710 Pension Fund* (7th Cir. 1982), 673 F.2d 931, 936-37.) The statutory language is the best indication of the intent of the drafters. *People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 674.

■ We interpret the language of the enforcement provision which provides that a contribution claim may be asserted "by a separate action before or after payment" as covering situations where no suit is pending which was initiated by the injured party; however, when there is a pending action, the contribution claim should be asserted "by counterclaim or by third-party claim" in that action. Here, Brites failed to raise its action for contribution by counterclaim in the pending action and is now contending that its rights, not asserted below by counterclaim or third-party complaint, have been prejudiced by the trial court's dismissal of its codefendant B & L.

Brites contends that the language in the statute section allowing a party to assert a contribution claim "by a separate action before or after payment" permits codefendants to present a united front against the plaintiff during trial, and to later litigate the contribution question when their position in regards to the plaintiff will not be damaged thereby. We have found support for this contention in that the committee notes compiled by the Chicago Bar Association's Civil Practice Committee states, in regards to the draft of Senate Bill 308,

that "[t]his section is a restatement of present Illinois law, giving a defendant the right to assume the position that he is not liable at all and to elect not to cross claim lest he create the impression he is liable." Legislative History, compiled by Chicago Bar Association Civil Practice Committee, at 4.

However, the problems which arise when a defendant does not assert a contribution claim in the underlying action are widely recognized. (See generally Annot., 24 A.L.R.3d 318 (1969); Comment, *Contribution in Missouri—Procedure and Defenses Under the New Rule*, 44 Mo. L. Rev. 691, 703-06 (1979).) As one commentator noted, it would be generally preferable to bring the contribution suit as part of the basic suit so that one jury could resolve the liability in the primary suit as well as the percentages of liability of each defendant. Horan, *Contribution in Illinois: Skinner v. Reed-Prentice and Senate Bill 308*, 61 Chi. Bar Rec. 331, 340 (1980).

Some States have dealt with this situation by enacting statutory provisions which force a defendant to make use of counterclaims or third-party complaints in order to protect its contribution rights. (*E.g.*, Ark. Stat. Ann. sec. 34—1007(3) (1962); Del. Code Ann., tit. 10, sec. 6306(b) (1975); Haw. Rev. Stat. sec. 663—17 (1968).) The New York statute which allows for a contribution claim to be asserted "in a separate action or by cross-claim, counterclaim or third-party claim in a pending action" has been interpreted as allowing for a separate action; however, the New York courts have emphasized that asserting a claim in a separate action " 'adds to the burden of already crowded courts, creates the possibility of inconsistent verdicts in the two actions and makes more difficult the assessment of equitable shares in multiparty situations in which one of three or more wrongdoers is not joined in the initial action.' " *Meckley v. Hertz Corp.* (1976), 88 Misc. 2d 605, 388 N.Y.S.2d 555, 557, quoting from Twentieth Annual Report of the Judicial Conference, notes at 221 (1975).

The possibility of increased litigation was a concern of the legislators during their debates on passage of our contribution statute. (1979 House Floor Debate on S.B. 308, 17—23.) We think the language and punctuation used in section 5 clearly indicate the legislative intent that where there is a pending action, the cause of action for contribution among joint tortfeasors is to be asserted by a counterclaim or third-party complaint in the pending action. As the *Chas. Ind Co.* court commented (decided before the adoption of the Act), by using the procedural vehicles of either the counterclaim or third-party complaint, "the entire controversy may be determined in one proceeding with its attendant savings in court time, attorney's fees and legal

costs." (*Chas. Ind Co. v. Cecil B. Wood, Inc.* (1965), 56 Ill. App. 2d 30, 47, 205 N.E.2d 786.) We are mindful of the third-party proceedings provision of our Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—406), and the counterclaims provision (Ill. Rev. Stat. 1981, ch. 110, par. 2—608), but conclude that nothing in those sections contravenes our holding.

 Because Brites did not assert a counterclaim for contribution in the pending action below, as provided for in the statute, we hold that it does not have standing to appeal the dismissal of its codefendants.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.