JUSTICE KARMEIER, dissenting: The genesis of this dispute was an action by LaVerne and Mary Peterson to recover damages for personal injuries they sustained when a truck operated by defendants/third-party plaintiffs (Clinton Harshman et al.) collided with their automobile in the State of Indiana. As the majority correctly recounts, the Petersons’ lawsuit was originally filed in an Indiana state court. Defendants/ third-party plaintiffs subsequently succeeded in removing the litigation to the United States District Court for the Northern District of Indiana, where it was docketed as Peterson v. Harshman, No. 2:99 cv 516 (N.D. Ind.). Defendants/third-party plaintiffs then moved for leave to bring a third-party action for contribution against Dr. George DePhillips, a surgeon who had treated Mr. Peterson in Illinois after the accident. According to the defendants/third-party plaintiffs, they had not joined DePhillips earlier because his potential liability had not been known to them until, in preparation for the upcoming trial, they were able to depose a neurosurgeon named Skaletsky who had examined Mr. Peterson at the behest of Peterson’s workers’ compensation insurance carrier. The federal magistrate presiding over the personal injury case exercised his discretion under Rule 14 of the Federal Rules of Civil Procedure and refused to allow defendants/third-party plaintiffs to pursue their third-party claim in the federal action. The federal judge’s decision was unrelated to the merits of the claim. Rather, it was based on his assessment of various factors, including prejudice and delay that the Petersons would inevitably experience if discovery, etc., were reopened to accommodate the third-party action and his belief that under the substantive law of Indiana, which governed the Peter-sons’ personal injury claim, the defendants/third-party plaintiffs could not assert a physician’s negligence either by way of contribution or as a nonparty defense. Peterson v. Harshman, No. 2:99 cv 516, slip op. at 4 (N.D. Ind. March 22, 2001). In an effort to avoid the bar of Indiana law, defendants/third-party plaintiffs argued that because Dr. DePhillips treated Mr. Peterson in our state, the third-party contribution claim should be governed by the law of Illinois. The federal magistrate found it unnecessary to decide this choice of law question, however, because even if Illinois law did apply, he would still not have allowed the third-party claim to proceed in his court. He explained that permitting the third-party claim to proceed would unduly complicate the Petersons’ lawsuit by injecting medical malpractice issues into a negligence action. If Illinois law applied to the medical malpractice action, the complications would be magnified because, then, one state’s law would control the underlying negligence action while a second state’s law would govern the third-party action, a difficult matter for a jury to follow. A final consideration in the federal magistrate’s decision was his belief that refusing to allow the third-party action to proceed in federal court would not necessarily defeat defendants/third-party plaintiffs’ right to seek contribution. In the magistrate’s view, the defendants/ third-party plaintiffs could still bring a separate action for contribution in Illinois under section 5 of the Contribution Act, as amended in 1995 by Public Act 89 — 7 (see 740 ILCS 100/5 (West 1996)). When the defendants/third-party plaintiffs were denied leave to pursue their contribution claim against Dr. DePhillips in federal court, they filed a third-party action for contribution against him in the circuit court of Cook County. Dr. DePhillips moved for dismissal of that third-party action on the grounds that, under Illinois law, one may not pursue a contribution claim in a separate action where, as here, another action regarding the matter has previously been filed. Rather, the party seeking contribution must do so by means of a third-party claim in the pending action. The circuit court denied DePhillips’ motion, but made a finding under Rule 308 (155 Ill. 2d R. 308) that its order involved a question of law as to which there is substantial ground for difference of opinion and that immediate appeal might materially advance the ultimate termination of the appeal. The precise question certified was this: “May a contribution claim be brought in accordance with Illinois law in a separate proceeding if the party first attempted to bring the claim in the original proceedings in a separate jurisdiction and was denied leave by that court to file said contribution claim?” The appellate court allowed the interlocutory appeal and answered this question in the negative. In its view, precedent from our court precluded the “pursuit of contribution claims in separate actions where another action regarding the matter has been previously filed.” 354 Ill. App. 3d 429, 431. Although my colleagues have affirmed the appellate court’s judgment, I do not believe their decision is correct. In my view, Illinois law does not invariably bar third-party actions from being litigated in separate proceedings and should not bar the third-party action filed by defendants/third-party plaintiffs in Cook County in this case. I would therefore reverse the judgment of the appellate court and affirm the order of the circuit court denying DePhillips’ motion to dismiss. Defendants/third-party plaintiffs’ action against DePhillips is founded on the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 et seq. (West 2004)), popularly known as the Contribution Act. The purpose of that statute is twofold: (1) to equitably distribute among all joint tortfeasors the burden of compensating an injured plaintiff, and (2) to encourage settlement of claims. In re Guardianship of Babb, 162 Ill. 2d 153, 175-76 (1994). Enforcement of contribution claims is dictated by section 5 of the Contribution Act. The version of that provision applicable to this case provides that “[a] cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action.” 740 ILCS 100/5 (West 1994). Under a straightforward reading of this statute, one joint tortfeasor may seek contribution from another in one of two ways. He may either (1) bring a separate action against the joint tortfeasor or (2) advance a claim against the joint tortfeasor within the confines of a pending proceeding. If the other joint tortfeasor is already a party to the proceedings, the claim may be asserted by means of a counterclaim. If the other joint tortfeasor is not already a party, he or she may be brought in by means of a third-party action. In Laue v. Leifheit, 105 Ill. 2d 191 (1984), our court held that the first of these two options is available only where the injured party has not already filed suit to recover damages for his or her injuries. Where such an action has been filed, the joint tortfeasor must seek contribution within the confines of that proceeding. If a defendant waits to file a claim for contribution until a verdict has been rendered and a judgment entered against him in the underlying personal injury action, his contribution claim will be barred. Laue v. Leifheit, 105 Ill. 2d at 196-97. Interpreting the statute in this way, the court believed, would advance strong public policy interests in having “[o]ne jury *** decide both the liability to the plaintiff and the percentages of liability among the defendants, so as to avoid a multiplicity of lawsuits in an already crowded court system and the possibility of inconsistent verdicts.” Laue v. Leifheit, 105 Ill. 2d at 196-97. The court further opined that “[Requiring the parties to litigate the matter in one suit [would] also save court time and attorney fees.” Laue v. Leifheit, 105 Ill. 2d at 197. The public policy considerations invoked by this court in Laue v. Leifheit are unquestionably sound. The statutory construction it employs is open to question. As I have just indicated, the decision interprets the law to mean that the “separate action” option may be employed only where the injured party has not already filed an action. If there is no underlying action on file, however, it is difficult to see how the contribution claim can be considered a “separate action.” In that instance, the contribution claim is not a separate action. It is the only action. The weaknesses in Laue v. Leifheif's statutory analysis were recognized by then Chief Justice Ryan, who wrote in dissent that the statute plainly permits alternative methods for asserting contribution claims. He could find “no expression of legislative intent that the cause of action created for contribution must be asserted by way of a cross-complaint or a third-party complaint if the injured party sues one of the tortfeasors.” (Emphasis in original.) Laue v. Leiflieit, 105 Ill. 2d at 198 (Ryan, C.J., dissenting). He believed that if the legislature had intended to require contribution actions to be filed in the underlying case, it could easily have done so. It did not. “Instead,” he wrote, it “provided that a cause of action may be asserted in all of the *** ways set out in the statute, including ‘by a separate action.’ ” (Emphasis in original.) Laue v. Leifheit, 105 Ill. 2d at 201 (Ryan, C.J., dissenting). In an effort to correct Laue v. Leifheit’s problematic construction of section 5, the legislature amended the law in 1995. That amendment revised the language of the statute by adding a new clause at the beginning of the provision which expressly stated that except for actions for healing art malpractice, “a cause of action for contribution among joint tortfeasors is not required to be asserted during the pendency of litigation brought by a claimant.” (Emphasis added.) 740 ILCS 100/5 (West 1996). When the federal magistrate in this case concluded that defendants/third-party plaintiffs would not be prejudiced by failure to obtain leave to file their contribution claim in the pending federal proceedings because Illinois law offered them the opportunity to pursue a separate action in our courts, this is the version of the law he was following. What the magistrate did not realize is that because the amendment was part of Public Act 89 — 7, it was rendered invalid by this court’s decision in Best v. Taylor Machine Works, 179 Ill. 2d 367 (1997), which declared Public Act 89 — 7 void and unenforceable in its entirety.[2] A fundamental rule of statutory construction is that where the language of a statute is clear and unambiguous, the court must enforce it as written. It may not annex new provisions or substitute different ones, or read into the statute exceptions, limitations, or conditions which the legislature did not express. People ex rel. Department of Professional Regulation v. Manos, 202 Ill. 2d 563, 568 (2002). That is so no matter how desirable the new provisions might be. Bridgestone/Firestone v. Aldridge, 179 Ill. 2d 141, 154-55 (1997). In my view, a compelling argument can be made that Laue v. Leifheit, 105 Ill. 2d 191 (1984), and Tisoncik v. Szczepankiewicz, 113 Ill. App. 3d 240 (1983), the appellate court decision on which the interpretation followed in Laue v. Leifheit was derived, are in direct conflict with these principles. There is no basis in the plain language of the statute for the limitation they impose. While they purport to rely on the terms used in the statute, their construction of the law is ultimately derived from policy considerations, not vocabulary or syntax. In construing a similar provision, the courts of New York had little difficulty in recognizing that it meant what it said and allowed contribution claims to be filed either in a separate proceeding or in the pending action. The court in Tisoncik v. Szczepankiewicz, 113 Ill. App. 3d 240, 246 (1983), acknowledged that interpretation of the law but declined to follow it, emphasizing the policy-considerations which militate against allowing contribution claims to be litigated separately, e.g., the added burdens on the courts and the possibility of inconsistent verdicts. That, of course, is not a legitimate method of statutory construction. If a statute is clear and unambiguous, the courts must apply it as written. We cannot rewrite a law under the guise of statutory construction merely because it may have consequences of which we disapprove. Weighing the relevant policy considerations is a matter for the legislature, not us. The legislature has not reenacted the 1995 amendment to section 5 of the Contribution Act necessitated by our decision in Laue v. Leifheit, but invalidated by Best v. Taylor Machine Works, 179 Ill. 2d 367 (1997). Significantly, however, it has not made any other amendments to that section either. Had the General Assembly made subsequent revisions to the law in a way that did not challenge the interpretation we adopted in Laue v. Leifheit, one could presume that the legislature had acquiesced in our construction of the law. See, e.g., In re Michele J., 209 Ill. 2d 428, 437 (2004). Absent any revisions, such a presumption would be unfounded. During the court’s deliberations in this case, the point was made that Laue v. Leifheit has been settled law in Illinois for 21 years and that we should therefore be reluctant to overrule it. I certainly agree that stare decisis is an essential doctrine. It is not, however, an inexorable command. Chicago Bar Ass’n v. Illinois State Board of Elections, 161 Ill. 2d 502, 510 (1994). It may yield when countervailing considerations so demand. See, e.g., People v. Sharpe, 216 Ill. 2d 481, 520 (2005). Such considerations are present here. First, as my discussion of the law has indicated, Laue v. Leifheit has not really been settled law for 21 years. The one time the legislature addressed section 5 of the Contribution Act following Laue v. Leifheit, it enacted a revision that rejected the limiting construction of the statute we adopted in that case. It was only because of this court’s decision in Best v. Taylor Machine Works, 179 Ill. 2d 367 (1997), to nullify Public Act 89 — 7 in its entirety that the revised version of section 5 is not in force today. Second, this matter does not present a situation where revision of the law will upset settled expectations or vested rights. The legal principle involved is procedural in nature. It does nothing but delineate how contribution claims may be enforced. Cases which are closed will be unaffected. If we begin applying the statute as it is actually written rather than as we construed it in Laue v. Leifheit, the only cases to which our decision would have any potential effect are existing disputes in which contribution claims remain unresolved or future cases which have yet to accrue. Third, the decision is poorly reasoned. As already noted, the decision purports to apply the plain language of the statute, but imposes conditions and limitations on the law which the language employed by the General Assembly will not support. In so doing, the court exceeded it legitimate function. The often repeated lesson from Henrich v. Libertyville High School, 186 Ill. 2d 381, 394-95 (1998), is pertinent here: “It is the province of the legislature to enact laws; it is the province of the courts to construe them. Courts have no legislative powers; courts may not enact or amend statutes. A court cannot restrict or enlarge the meaning of an unambiguous statute. The responsibility for the justice or wisdom of legislation rests upon the legislature. [Citations.] A court must interpret and apply statutes in the manner in which they are written. A court must not rewrite statutes to make them consistent with the court’s idea of orderliness and public policy. [Citation.]” This impediment cannot be avoided by arguing that the court is merely giving effect to a limitation created by the legislature itself. If such a limitation could somehow be divined from the text of the statute, a possibility incompatible with my understanding of the English language, a different but equally serious constitutional problem would be created. Under the interpretation of section 5 adopted in Laue v. Leifheit, the legislature has decreed that “if there is a pending action, *** then the party seeking contribution must assert a claim [under the Contribution Act] by counterclaim or by third-party claim in that action.” Laue v. Leifheit, 105 Ill. 2d at 196. If that interpretation were valid, it would mean that the legislature had totally divested the courts of any authority to permit contribution claims to be enforced through separate proceedings, even where considerations of efficiency and docket management would militate in favor of litigating the cases separately. Such matters of procedure and docket management are central to the power of the judiciary. While the legislature may enact laws that complement the authority of the courts or that have only a peripheral effect on judicial administration, a legislative enactment which unduly encroaches upon the inherent powers of the judiciary violates the doctrine of separation of powers encompassed in section 1 of article II of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, § 1). Kunkel v. Walton, 179 Ill. 2d 519, 528 (1997). The restrictions imposed here trench no less heavily on the inherent authority of the judiciary than the statutory restrictions on damages at issue in Best v. Taylor Machine Works, 179 Ill. 2d 367 (1997). If the limitations on damages could not pass constitutional muster, it is difficult for me to see how the procedural restrictions here could be upheld. These separation of powers problems disappear if section 5 is simply interpreted as it is written. Under the actual terms of the statute, alternate avenues are provided for enforcing contribution claims. There is no restriction on the court’s authority to allow contribution claims to be litigated separately from the underlying action where appropriate. The inherent authority of the judiciary is unchallenged. Because courts have a duty to construe statutes in a manner that upholds their validity whenever it is reasonably possible to do so (In re Robert S., 213 Ill. 2d 30, 45 (2004)), that is the approach we should take. In reaching this conclusion, I am mindful that the defendants/third-party plaintiffs have not, themselves, urged us to reject Laue v. Leifheit, as the General Assembly attempted to do when it revised section 5 of the Contribution Act through Public Act 89 — 7. Absent such a challenge, we could deem the matter waived. Waiver, however, is an admonition to the parties, not a limitation on the jurisdiction of this court. In furtherance of its responsibility to provide a just result and maintain a sound body of precedent, a court of review may override considerations of waiver. Illinois State Chamber of Commerce v. Filan, 216 Ill. 2d 653, 664 (2005). I would decline to find waiver in this case and vote to overrule Laue v. Leifheit. Even if I believed that Laue v. Leifheit should be retained, I do not believe that it compels the result reached by the majority in this case. Laue v. Leifheit is distinguishable on its facts. In that case, which involved liability for injuries sustained in an automobile collision, the jury found the driver of one vehicle liable and awarded damages to the driver and passengers in the second vehicle. In so doing, it reduced the damages awarded to the driver of the second vehicle by 33V3% based on its assessment of her comparative negligence. Laue v. Leifheit, 105 Ill. 2d at 193-94. After the jury returned its verdict and judgment was entered against the defendant, the driver of the first vehicle filed a contribution claim against the driver of the second vehicle. The circuit court granted judgment on the pleadings in favor of the driver of the first vehicle and ordered the driver of the second vehicle to make contribution to him for a portion of the damages for which he had been found liable. The appellate court reversed. We affirmed the judgment of the appellate court and remanded to the circuit court with directions to dismiss the complaint for contribution. Laue v. Leifheit, 105 Ill. 2d at 194-98. A contrary result is mandated in the case before us, for the situation here is fundamentally different. The alleged negligence on which defendants/third-party plaintiffs’ contribution claim was predicated was separate and distinct from the underlying claim filed by the Petersons. It occurred after the collision for which defendants/third party plaintiffs were found liable; involved a new and unrelated party; and was based on a totally different legal theory, medical malpractice. Unlike Laue v. Leifheit, the defendants/third-party plaintiffs did not wait to see how the underlying claim against them would be resolved before taking action. They asserted their contribution claim as soon as they became aware of it. In contrast to Laue v. Leifheit, the matter had not yet gone to verdict and judgment had not yet been entered. When defendants/third-party plaintiffs sought leave to file their contribution claim here, the underlying negligence action remained unresolved. Under these circumstances, none of the public policy considerations that motivated our decision in Laue v. Leifheit are present. The purpose of the rule we articulated in that case was not to impede contribution claims, but to insure that they are litigated efficiently, expeditiously and with due consideration to fairness of all the parties. By first seeking permission to file the claim in the pending negligence claim, defendants/third-party plaintiffs insured that those considerations could be properly assessed by the court. A federal magistrate balanced the relevant factors and concluded that the just course would be to require defendants/third-party plaintiffs to pursue their contribution claim separately rather than in connection with the underlying vehicle collision case. It is difficult to find fault with the magistrate’s assessment. Had the matters been litigated together, the trial of the underlying claim would have been complicated and delayed with little benefit in terms of efficiency. Because the issues in the contribution claim differed so substantially from those in the underlying action, trying the matters separately would not involve significant duplication of effort. Litigating the medical malpractice case separately in Illinois, where the alleged malpractice took place, would eliminate the choice of law problems. There would be no possibility of inconsistent verdicts, for there is no question as to plaintiffs’ comparative fault and the extent of plaintiffs’ injuries would not be revisited. The only issue would be how responsibility for the damages should be apportioned. There would be no undue burden on the litigants, for the only parties who would be required to appear in both proceedings are defendants/third-party plaintiffs, who obviously have no objection to pursing their contribution claim separately. There would be no undue burden on the courts of Illinois, for the contribution claim is the only aspect of the dispute they would be called upon to resolve, and Illinois clearly has an interest in hearing claims arising from negligence that occurs in our state, as Dr. DePhillips’ alleged malpractice did. As observed earlier in this dissent, when the federal magistrate declined to permit defendants/third-party plaintiffs from pursuing their contribution claim in the pending federal action, he believed, erroneously, that section 5 of the Contribution Act, as amended by Public Act 89 — 7, superceded Laue v. Leifheit and afforded them the opportunity to advance that claim in the courts of Illinois. The majority’s opinion finds it significant that defendants/third-party plaintiffs did not challenge the magistrate’s decision, particularly given “the magistrate’s obvious misstatement of Illinois contribution law.” 218 Ill. 2d at 502. I disagree. Although reconsideration or appellate review may well have led to the realization that the magistrate was wrong about Laue v. Leifheit being superceded by statute, that does not mean that his decision would have been set aside. The federal magistrate weighed numerous factors besides the viability of Laue. His decision involved a matter of discretion, and I think it very unlikely that a reviewing court would have found an abuse of discretion here. As I have just discussed, there were excellent reasons for the third-party action to be handled separately wholly independent of Illinois law. Defendants/third-party plaintiffs would therefore have accomplished nothing by seeking reconsideration or review from the federal courts. Pursuing that recourse would merely have delayed resolution of the case further. The majority’s opinion hints that it may ultimately have reached a different result had defendants/third-party plaintiffs attempted to obtain relief from the federal courts through reconsideration or review, but been unsuccessful in doing so. Under the majority’s own analysis, however, it is difficult to see how that could be true. If section 5 of the Contribution Act does preclude contribution actions from being litigated separately from the underlying negligence claims, as the majority holds, we would be compelled to apply it as written, no matter how unjust the federal court’s misconstruction of the law might be. No principle of statutory construction permits us to invoke equitable principles to create exceptions to a statute not expressed by the legislature. The majority suggests that under Illinois law, a party who has been denied leave to file a third-party action in a pending matter would be required to appeal that denial before attempting to assert his third-party claim in a separate proceeding. None of the authorities cited in the opinion, including Henry v. St. John’s Hospital, 138 Ill. 2d 533 (1990), so holds. Section 2 — 406 of the Code of Civil Procedure (735 ILCS 5/2 — 406 (West 2004)), on which the majority also relies, is not germane to the question. It sets forth rules governing bringing new parties into actions that are already pending. It does not pertain to third-party claims asserted in separate proceedings. From the record now before us, there is no basis for holding that defendants/third-party plaintiffs were in any way remiss in protecting their position. They attempted to bring their third-party claim in federal court as soon as they learned, through discovery, that grounds for such a claim existed. When the federal magistrate denied them leave to proceed there, defendants/third-party plaintiffs moved seasonably to preserve their claim by bringing suit in Cook County. Under these circumstances, one cannot fairly charge that they slept on their rights. For the foregoing reasons, I believe that the question certified by the circuit court should be answered in the affirmative. Under circumstances such as those present in this case, Illinois law does permit a contribution claim to be brought in a separate proceeding if the party first attempted to bring the claim in the original proceedings in another jurisdiction and was denied leave by that court to do so. Laue v. Leifheit is of dubious validity and should be overruled. Even if we retain that decision, however, this case is distinguishable. Allowing the case to proceed separately in Cook County does no violence to Laue v. Leifheit and is consistent with the principles of fairness and sound judicial administration it represents. Accordingly, I dissent. The judgment of the appellate court should be reversed, the order of the circuit court denying DePhillips’ motion to dismiss should be affirmed, and this cause should be remanded to the circuit court for further proceedings. The suggestion has been made that even if the amended version of the statute were valid, the federal magistrate’s reading of Illinois law would still have been incorrect. The basis for this assertion is the amendment’s qualifying language precluding its application to medical malpractice cases. As the federal magistrate correctly realized, however, the case before him was not a medical malpractice action. It was a negligence claim involving a collision between a truck and a car. The exception was therefore inapplicable.