Charles Scheck, Plaintiff-Appellee, v. Evanston Cab Company, a Corporation, and James Pierce, Defendants-Appellants.

Gen. No. 51,732.

First District, Third Division.

March 21, 1968.

Bellows and Pickard, of Chicago (Jay W. Bellows and Theodore R. Pickard, of counsel), for appellants.

Howard, French & Healy, of Chicago (Richard G. French, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This action was brought to recover damages sustained by the plaintiff in a collision between his automobile and a taxicab owned by the defendant Evanston Cab Company and driven by James Pierce. Defendants admitted liability and the case went to trial on the issue of damages only. The jury returned a verdict for $7,500 and the court entered judgment thereon.

Four charges of error are to be considered: (1) there was no proper verdict, as the jury did not sign a verdict before it was discharged; (2) the verdict was excessive and contrary to the manifest weight of the evidence; (3) the jury should not have been instructed to disregard

evidence as to a prior injury; and (4) the court erred in giving the jury plaintiff's instruction No. 7. The facts follow.

On March 7, 1959, the plaintiff while driving his automobile on Lake Shore Drive near the intersection of Goethe Street in Chicago was struck in the rear by the taxicab. The plaintiff's body went forward and his head went backward from the impact. At that time plaintiff said he felt a light tingle in his neck. No evidence of personal injury was noted in the police report. Plaintiff continued on his trip to South Bend, Indiana, and returned to Chicago the next day. Ten days later he saw Dr. Jack Robbins, an orthopedic surgeon. Dr. Robbins found that plaintiff had marked spasms of the muscles in his neck, the muscles standing out in bold relief, with a list to the right. He received therapy treatments for three days as an out-patient in the Evanston Hospital. On March 27, 1959, his condition was significantly unchanged and a head halter was prescribed. On April 7, 1959, the findings were similar, but a slight deformity had developed. On Dr. Robbins' direction the plaintiff was admitted to Evanston Hospital on April 10th where he remained until April 15, 1959. He was put in traction and medication was prescribed to reduce torticollis, which the doctor defined as a constant or intermittent spasm of the muscles of the neck, also called a "wry neck." Upon his discharge, the diagnosis was given as cervical radiculitis of the seventh cervical root. On May 19, 1959, the date of plaintiff's last visit to Dr. Robbins, the doctor found that "(t)he neck was substantially unchanged, there was more limitation of motion as far as general neck motions were concerned. Torticollis list to the side was marked." At that time the doctor gave the plaintiff instructions on living with the problem and told him that any treatment or medication he could prescribe would be useful only when the symptoms were severe. At the trial Dr. Robbins observed that plaintiff's head

222

was carried asymmetrically. He said it was a very mild case of spastic torticollis. Plaintiff had no loss of time from work, except for the five or six days when he was hospitalized.

Prior to the accident plaintiff had been injured when he fell from a sun porch on July 26, 1958. As a result of that accident he was hospitalized for two weeks. Dr. Robbins and Dr. V. Turner, his partner, later deceased, attended the plaintiff on that occasion, and Dr. Robbins described the injuries. He did not testify to any connection between the 1958 occurrence and plaintiff's present complaint. Plaintiff testified that after his release from the hospital in August 1958 he had no difficulty with his neck or with his head pulling to the left or right until the accident of March 7, 1959.

Dr. Horace Turner examined plaintiff on behalf of the defendants shortly before the trial and his diagnosis of the plaintiff's condition based on a physical examination and five X rays was that it was scoliosis or curvature of the spine. He saw no indication of spastic torticollis and he was not questioned as to any connection between the 1958 occurrence and the one here involved.

We proceed to consider the charge of error with respect to the verdict of the jury. When the jury reached a verdict and returned to the courtroom, the clerk was handed a form of verdict which was part of an instruction with respect to forms of verdict which could be returned. The instruction told the jury that if they found for plaintiff and against defendants, the form of verdict to be used was as follows:

"We, the jury, find in favor of the plaintiff and against the defendants and assess the damages in the sum of $————."

The jury filled in the blank with respect to damages by inserting the figure, $7,500. The clerk read this in open court and in the presence of the jury. No poll of the

jury being requested by either party, the jury was instructed to return to the assembly room. Shortly after they left, the judge observed that while the amount of damages had been stated, the verdict had not been signed by the jurors. He telephoned the assembly room and asked that the jury not be disbanded, but be brought back by a bailiff immediately. This was done. The bailiff was called by the defendants to testify at the hearing on the post-trial motion. She said that when she was informed of the judge's direction, she brought the jury back immediately; that they were never out of her sight and that no one talked to them. Upon their return, the jurors were instructed by the court to go into the jury room and sign the verdict. The verdict was duly signed and returned and judgment entered thereon. It would have been a proper verdict even if not finally signed.

■■ A verdict read in open court by the clerk in the presence of all the jurors is sufficient to establish validity, even though it was not signed by the jurors. Griffin v. Larned, 111 Ill 432; Mertz v. People, 81 Ill App 576. The Civil Practice Act (Ill Rev Stats, c 110, § 68(1) (1967)) provides as follows: "It is sufficient for the jury to pronounce their verdict by their foreman in open court, without reducing it to writing, if it is a general verdict. The clerk shall enter it in form, under the direction of the court." There is no question whatever that the finding of guilty and the assessment of damages was the true verdict of the jury.

■■ The second charge of error is that the verdict was excessive. The evidence amply sustains plaintiff's claim that the injuries in question were the result of the accident. A competent medical expert testified that the condition was recurrent and permanent. Damages awarded in a personal injury case will not be set aside unless so palpably excessive as to indicate passion or prejudice on the part of the jury. Holsman v. Darling State St.

Corp., 6 Ill App2d 517, 128 NE2d 581. No such passion or prejudice is indicated in the case before us.

■■ The third point made by defendants is that the jury should not have been instructed to disregard the prior injury. The burden was on the defendants to show a connection with the prior injury. The fact that plaintiff referred to it in his opening statement does not relieve the defendants of the burden of establishing a causal relationship between the prior injuries and those presently involved. Caley v. Manicke, 29 Ill App2d 323, 173 NE2d 209 (Reversed on other grounds 24 Ill2d 390, 182 NE2d 206) ; Marut v. Costello, 53 Ill App2d 340, 202 NE2d 853 (Affirmed 34 Ill2d 125, 214 NE2d 768). The opportunity to do so was granted by the court, but defendants failed to establish a connection. The sole evidence presented on this phase of the case by the defense is that the same part of the anatomy may have been injured in both occurrences. The instruction was proper.

■ We proceed to defendants' last contention, that there was error in giving plaintiff's Instruction No. 7 (IPI 5.01). That instruction informed the jury that it could infer that the testimony of a witness not called would be adverse if the witness was under the control of the party and if the witness was not equally available to the adverse party. The unavailable witness was the codefendant James Pierce, an employee of the defendant cab company at the time of the occurrence. Liability was admitted, but the plaintiff desired to show by the witness in question the force of the blow as bearing on the question of damages. Defendants sought to minimize the extent of plaintiff's personal injuries by showing that a nominal amount of property damage was inflicted in the collision and hence the impact was light. The defendant Pierce had knowledge of these facts. His testimony would not have been merely cumulative or corroborative. No evidence was introduced by the defendants to

explain the absence of Pierce or their failure to produce him as a witness at the trial. Under such circumstances it was proper to give the instruction in question. Petersen v. General Rug & Carpet Cleaners, Inc., 333 Ill App 47, 77 NE2d 58; Bassi v. Morgan, 60 Ill App2d 1, 208 NE 2d 341. We find no error in the record.

Judgment affirmed.

DEMPSEY, P. J. and SULLIVAN, J., concur.