DAVID O'BRIEN, Plaintiff-Appellee, v. THOMAS STEEL CORPORATION, Defendant-Appellant.

Third District   No. 3—88—0215

Opinion filed April 5, 1989.—Rehearing denied May 10, 1989.

Block, Krockey, Cernugel & Cowgill, of Joliet (Thomas E. Cowgill, of counsel), for appellant.

Garrison, Fabrizio & Hanson, Ltd., of Joliet (James Garrison, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff David J. O'Brien filed suit against defendant, Thomas Steel Corporation (Thomas), seeking damages as a result of an injury suffered by O'Brien when he was struck by a forklift operated by a

Thomas employee. The jury returned a verdict in favor of O'Brien, finding Thomas negligent.

On appeal, Thomas argues the trial court erred in (1) excluding testimony concerning O'Brien's prior back injury, (2) excluding statements made by O'Brien concerning the nature and extent of his injury, (3) allowing O'Brien to argue that his wages were low in the early 1980's because of economic conditions, and (4) allowing expert testimony as to the necessity and cause of future medical treatment. Thomas also argues the jury's findings are contrary to the manifest weight of the evidence. However, in light of the view we take with regard to Thomas' first four arguments it is unnecessary to discuss defendant's manifest weight argument.

O'Brien was an ironworker employed by Tonn & Blank. Tonn & Blank was engaged by Thomas to perform structural steel erection for a Thomas construction project. At the construction site, Tonn & Blank was allocated a construction storage area for the various pieces of steel needed for its part of the project. Thomas stored a number of its component parts in the same general area as the Tonn & Blank storage area. A number of these component parts were used in the defendant's day-to-day operations and were moved by use of forklifts.

On April 29, 1985, the plaintiff and co-workers were in the Tonn & Blank storage area. A Thomas employee had driven a forklift into the area to pick up a load of materials. After procuring his load, the driver backed up across an aisle and struck the plaintiff, or a checker plate the plaintiff was standing on, or near, causing O'Brien to be thrown through the air, resulting in O'Brien injuring his back. The forklift was equipped with an audible alarm system that would normally activate when the forklift was being operated in reverse; however, the alarm was not in operation at the time of the plaintiff's injury.

The plaintiff was seen by various emergency room and company doctors and was last treated by Dr. Curtis Rentschler. O'Brien was diagnosed as having a herniation of the nucleus pulposus at two levels, L-4 and L-5. Following treatment, Dr. Rentschler indicated that the plaintiff should prepare for an alternative line of work. The doctor also stated that the plaintiff may need to have surgery in the future, but that at minimum, O'Brien would be required to visit an orthopedic surgeon at least once every six months. The plaintiff filed suit against Thomas claiming negligence. A jury returned a verdict finding Thomas negligent, assessing O'Brien's damages in the amount of $125,000, finding O'Brien to be 20% contributorily negligent, and reducing his damages accordingly to $100,000.

On appeal Thomas contends the trial court erred in excluding testimony concerning O'Brien's prior back injury. The parties disagree as to the severity of the plaintiff's prior injury; however, the plaintiff admits suffering a back injury in 1978. Evidence of a prior injury is admissible where the injury involves the same area of the body. (*Palsir v. McCorkle* (1966), 70 Ill. App. 2d 425, 216 N.E.2d 682; *Elberts v. Nussbaum Trucking, Inc.* (1981), 97 Ill. App. 3d 381, 422 N.E.2d 1040.) The *Palsir* and *Elberts* decisions do not require that a causal connection between injuries be established in order for evidence of the prior injury to be admitted. In addition, *Vandermyde v. Chicago Transit Authority* (1979), 73 Ill. App. 3d 984, 392 N.E.2d 48, stands for the proposition that no medical evidence of any kind is needed to introduce the existence of a prior injury where the prior and current injuries are in the same area of the body. The *Vandermyde* case has been followed by *Falkenthal v. Public Building Comm'n* (1982), 111 Ill. App. 3d 703, 444 N.E.2d 498, which involved an injury to the plaintiff's head. In *Falkenthal*, plaintiff's expert testified that a blow had caused a condition of narcolepsy in the plaintiff. The defendant's expert testified that narcolepsy could not have been caused by a trauma to the head. Defendant was allowed to introduce evidence of two prior accidents that had also caused injuries to her head. There was no testimony from any expert that the two prior injuries caused plaintiff's narcolepsy. The court found that the two prior injuries were admissible because they were to the same area of the body. *Falkenthal v. Public Building Comm'n* (1982), 111 Ill. App. 3d 703, 444 N.E.2d 498.

In this case the defendant states that Dr. Greenwald, the plaintiff's treating doctor in 1978, will testify that he diagnosed plaintiff's 1978 injury as L-5 disc syndrome, supported by a myelogram taken on January 25, 1979. The plaintiff's present injury was diagnosed as a herniation of two spinal discs, one at L-4 back level, and the other at L-5. Certainly the two injuries are located in a similar area of the plaintiff's body. Consequently, the injuries fall within the guidelines set forth in *Palsir* and *Elberts* and do not require the defendant to establish a causal connection between the plaintiff's present injury and the 1978 injury.

The plaintiff attempts to distinguish the *Palsir* and *Elberts* decisions, relying on *Tisoncik v. Szczepankiewicz* (1983), 113 Ill. App. 3d 240, 446 N.E.2d 1271. In *Tisoncik*, the plaintiff suffered a knee injury in an auto accident in 1979. Ten years prior to this accident, plaintiff had injured the same knee. The plaintiff filed suit against defendant, and the defendant sought to introduce evidence of plaintiff's prior in-

jury. The appellate court found that the striking of the evidence did not result in prejudice to defendant's theory of aggravation of a pre-existing condition. The court noted that the injury took place 10 years before the current incident. Further, the court found that there was no evidence in the record as to the nature, extent, duration or treatment of the first accident. In the present case the defendant attempted to offer substantial evidence as to the plaintiff's prior injury and the treatment he received.

The failure to allow the defendant to introduce evidence of the plaintiff's prior back injury is sufficient grounds to order a new trial. The remaining issues raised by the defendant will be addressed in the interest of judicial economy.

■ The defendant's second contention is that the trial court erred in failing to allow the introduction of statements O'Brien allegedly made to a third party concerning his previous back injury and its affect on his ability to perform as an ironworker. Evidence of an injured person's general health and physical condition, both before and after the injury, is admissible to show the extent, nature and probable effect of the injury and the cause of the subsequent physical condition. (*Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 484 N.E.2d 542.) Such evidence, however, must be connected with the injury to be material to the issue of damages. *Reynolds v. Alton & Southern Ry. Co.* (1983), 115 Ill. App. 3d 88, 450 N.E.2d 402.

■ According to Thomas, the plaintiff, while speaking to vocational rehabilitation counselor Grace Gianforte in the year following his 1978 injury, told Gianforte that he had suffered a previous back injury. O'Brien allegedly stated he could not trust his back to allow him to do the heavy lifting which is required for ironworking. Gianforte also stated O'Brien had explored other possible sources of employment which were less physically demanding. The statements made by O'Brien concern his general health and physical condition after the 1978 injury but before the current injury. The area Gianforte speaks of is located in the same area of the back the plaintiff has injured in this action. Consequently, the statements made by O'Brien to Gianforte were connected with O'Brien's injury and should have been admitted.

The defendant's next contention is that the trial court erred in allowing the plaintiff to argue during closing arguments that economic conditions were terrible during the early 1980s. Thomas contends the plaintiff's earning record during the early 1980s implies that the plaintiff was unwilling or unable to work because of his 1978 back injury. According to the defendant, the plaintiff's statements concerning

economic conditions during a specific period erroneously allows O'Brien to rebut Thomas' prior injury contentions without providing any evidence supporting plaintiff's economic claims.

In support of its position, defendant cites *Prendergast v. Cox* (1984), 128 Ill. App. 3d 84, 470 N.E.2d 34, in which the court sustained a defendant's objection to plaintiff's rebuttal argument urging jurors to take inflation into account in measuring damages. The court sustained the objection on the basis that there was no evidence presented as to inflation.

■ During closing arguments an attorney is confined to matters that are in evidence or admitted and uncontroverted. (*Ryan v. Blakey* (1979), 71 Ill. App. 3d 339, 389 N.E.2d 604.) The plaintiff has failed to present any evidence as to the economic conditions in Joliet during the period in question. Consequently, the plaintiff's remarks concerning Joliet's economic condition prejudiced the defendant and should not have been permitted.

With regard to the defendant's final contention concerning the admission of testimony of the plaintiff's doctor, we decline to discuss this argument. Any issue concerning this testimony is unlikely to arise on retrial, or if it does, it will arise in a different context.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed and remanded with directions to proceed with the views expressed within this decision.

Reversed and remanded.

JUSTICE BARRY, specially concurring:

I concur with my colleague's conclusion that reversible error was committed in the trial of this case and that it must be remanded for a new trial; however, I cannot agree that Thomas' fourth issue should be ignored. Thomas contends that the trial court erred in allowing, over defendant's objection, expert testimony as to the necessity and cost of future medical treatment. Contrary to the majority, I see no reason to anticipate that the witness and his testimony would not be tendered on retrial. In my opinion the issue must be addressed.

Plaintiff's expert, Dr. Rentschler, testified that "the surgeon who did Joe Montana only operates on about ten percent of those cases that come in through his doors on the average. And I think this would be *** a reasonable percentage." With respect to plaintiff, the doctor stated, "His disk did improve. It improved satisfactorily to the extent that when I last saw him, I did not feel that surgery should be done at that time. I explained to him that it still could come to surgery if

this thing ruptured a little further. But in view of the improvement, that if he continued with the plan of doing the exercises and if he didn't get worse, that I didn't think he was going to come to surgery." He also testified that plaintiff "is a candidate for possible future surgery." Later, after discussing the cost of hospitalization and follow-up procedure for such surgery, the doctor explained that, of the patients who have this type of surgery, about 25% do well, 50% still have symptoms, and the remaining 25% do poorly. Thomas argues that this testimony was highly prejudicial and irrelevant because Rentschler could not establish that plaintiff would in fact need the surgical procedure.

In *Biehler v. White Metal Rolling & Stamping Corp.* (1975), 30 Ill. App. 3d 435, 333 N.E.2d 716, testimony of plaintiff's doctor concerning the cost of future medical services was excluded at trial on defendants' motion. On appeal, this court determined that the trial court's evidentiary ruling was error. As a foundation for the future costs evidence in *Biehler*, the doctor had "testified that in his opinion Mr. Biehler would need surgery to fuse the subastragalar joint and adjacent joints to reduce the pain and motion while walking. The doctor also stated, '[I]f he can continue at a sedentary job he may get along without surgery, but I have a feeling that he will elect surgery.' " (30 Ill. App. 3d at 445, 333 N.E.2d at 724.) We held that this testimony posed a question of fact as to "whether the plaintiff was reasonably certain to have future surgery \*\*\*, and if so, what the reasonable value of future medical services would be." 30 Ill. App. 3d at 445-46.

In my opinion, the foundation testimony presented by Dr. Rentschler in this case is sufficiently akin to that approved by this court in *Biehler* to support the admission of possible future medical costs evidence. Based on the totality of the evidence presented at trial, the jury was free to weigh Rentschler's testimony, to determine whether plaintiff was reasonably certain to undergo surgery in the future or not, and thereafter to reject or include the reasonable value of such services in determining damages.

JUSTICE HEIPLE joins in this special concurrence.