TRUMAN J. ELLIOTT, Plaintiff-Appellant, v. GARY A. KOCH *et al.*, Defendants-Appellees (Patricia Elliott, Plaintiff).

Third District   No. 3—89—0611

Opinion filed July 9, 1990.—Rehearing denied August 7, 1990.

2

M. Michael Waters, of Smith, Waters, Kuehn & Hughes, Ltd., of Peoria, for appellant.

Wayne L. Hanold and James R. Morrison, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee Gary A. Koch.

Quinn, Johnston, Henderson & Pretorius, of Peoria, for appellee Leroy J. Harms.

John L. Morel, of Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington, for appellee William E. Mines.

4

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Truman Elliott was involved in a three-car accident on December 14, 1985, and filed this action against the defendants Gary Koch (Koch), Leroy Harms (Harms), and William Mines (Mines) for personal injuries. The jury returned a verdict for Mines against plaintiff and for plaintiff against Koch and Harms and awarded plaintiff $586 in damages. The jury returned a verdict for all the defendants against Patricia Elliott. Plaintiff appeals the damage award and raises issues on the inconsistency of the verdict, jury instructions, admissibility of evidence, arguments of counsel, and questioning of witnesses. Patricia Elliott is not a party to this appeal. We affirm.

The parties in this appeal were traveling on War Memorial Drive in Peoria on December 14, 1985; plaintiff was driving eastbound; and defendants were traveling in separate cars westbound. Mines was stopped at the intersection of War Memorial and Cannes Drive, waiting to make a left turn onto Cannes Drive. Harms was traveling immediately behind Mines, and Koch was behind Harms. Harms testified he did not see any brake lights or turn signal on Mines' car and, therefore, as he approached Mines' car, he swerved to the left to avoid hitting Mines. There was no contact between Harms' car and Mines' car. Koch saw Harms swerve, but he could not stop before hitting Mines' car, pushing it across the center line of War Memorial into the left side of plaintiff's van.

Plaintiff, a meter reader for the Central Illinois Light Company (CILCO), testified he was traveling east on War Memorial on December 14 when he noticed Harms' car swerve to avoid Mines' car. Plaintiff testified Mines' car hit his van on the driver's door and slid down the side of the van to his left rear tire. Plaintiff stated he was knocked around in his van after the collision but remained in the driver's seat without striking any objects in the cab of the van. Plaintiff stated he remained at the accident scene for approximately one hour and a friend drove him to a hospital about 2½ to 3 hours after the accident. In the emergency room, plaintiff was treated by Dr. Caffery. Caffery prescribed a muscle relaxant together with Tylenol with codeine and released plaintiff from his care.

Plaintiff saw his physician, Dr. Martin, on December 16, 1985. Plaintiff stated he was stiff and sore for a couple of days and the pain kept getting worse. Plaintiff continued to see Martin until he was released from his care on January 9, 1986. Plaintiff saw Dr. Adams in July 1986, after he experienced increased pain in his lower back while on vacation in Florida in May 1986. Plaintiff testified Adams ordered a CAT scan, which revealed a ruptured disc. According to plaintiff,

Adams scheduled plaintiff for an appointment with Dr. Lister, a neurosurgeon. Plaintiff met with Lister but did not schedule surgery. Late in 1986, plaintiff went back to see Martin, who put plaintiff in contact with Dr. Weinger. Weinger performed a lower laminectomy on plaintiff's back in January 1987.

Plaintiff testified that before the accident in December 1985, he was very active in sports, especially tennis and skiing, and frequently went on long motorcycle trips with his wife. Plaintiff was very active in church activities with his wife prior to the accident but, after the accident, he could not participate and spent a lot of time sitting in bars. Plaintiff testified he had seen doctors in the past for back injuries but, in the three years before the accident, had not seen any doctors or suffered any pain in or injury to his back. Plaintiff testified that since his surgery in January 1987, he was still employed as a meter reader for CILCO but, because his back gets stiff, he has to do stretching exercises every couple of hours. Plaintiff also testified he had not participated in any sports since the accident, is unable to work around his house, and does not sleep well at night.

On cross-examination by Koch, plaintiff testified he did not recall an injury to his back in 1977. Plaintiff stated he did recall a back injury in November 1979, which occurred after he fell in the snow and injured his tailbone and left buttock. Plaintiff wore a back brace for a time after the 1979 back injury. Plaintiff also stated he injured his back in April 1981 and in January 1982. Plaintiff stated he was hospitalized by Dr. Holden in 1982 for the back injury. Plaintiff also stated from the day of the accident, December 14, 1985, to October 22, 1986, he did not miss a day of work or come in late to work. Plaintiff admitted that when he saw Dr. Martin in April 1986 for a bruised heel, he did not complain of back pain. Plaintiff stated he reads approximately 700 meters a day as a meter reader, some meters being grouped together either inside a building or outside. Plaintiff also reported he is on a bowling team at CILCO. Plaintiff continued to bowl after the accident for a time, started again after the surgery in 1987, and continued until December 1988. At the time of the accident, plaintiff stated he was thrown sideways in the van, but there was no impact in the back of the van.

On cross-examination by Harms, plaintiff stated that while at the scene after the accident on December 14, he did not have any trouble walking around. Plaintiff stated that while he did not miss any work between December 1985 and July 1986, he did quit early one day. Plaintiff stated he did not have any restrictions on his activities since the surgery in January 1987 and had not missed any work since

March 1987. Plaintiff stated when he saw Adams in July 1986, he described his work for CILCO, which involves jumping over fences and other obstacles. Plaintiff denied he told Adams in July 1986 that his back pain increased after jumping over these fences. Plaintiff stated he gave Weinger a full medical history of his back problems, but did not recall giving a full history to Adams, Martin, or Holden.

On further cross-examination by Koch, plaintiff admitted he wore the back brace on different occasions during 1980, 1981, and 1982. On redirect, plaintiff stated he gave the back brace away before the accident in December 1985.

Dr. Dennis R. Caffery, a general practice physician, testified by evidence deposition for the plaintiff. He examined plaintiff on December 14, 1985, in the emergency room of Methodist Hospital in Peoria. Plaintiff complained of lower back pain on the left side, and Caffery found tenderness over the left lower lumbosacral spine. Caffery found some muscle spasms in plaintiff's lower back. A straight-leg test was positive on the left, establishing there was pain in plaintiff's lower back. Caffery found no objective findings of herniation and diagnosed lumbosacral strain. Caffery stated if he had seen any indication of herniation he would have ordered a magnetic resonance imagery (MRI) test and CAT scan, the diagnostic tests performed when herniation is suspected. Caffery told plaintiff to see his physician, Dr. Martin. Caffery stated that on December 14 he had no knowledge of plaintiff's prior back injuries. Caffery also testified it was possible that plaintiff suffered an acute herniated disc on December 14, 1985.

On cross-examination, Caffery also stated he did not know an acute diagnosis of herniated disc in plaintiff's back had not been made until July 8, 1986, when Dr. Adams examined plaintiff.

Dr. Robert Martin, a physician specializing in occupational medicine, testified for plaintiff. When he examined plaintiff on December 16, 1985, plaintiff told Martin he had been in a three-car accident and he had pain in his lower back. On December 16, Martin found that plaintiff had tightness in his left lower lumbosacral muscles, which indicates muscle spasms, but is not unusual with a herniated disc injury. A straight-leg test was positive at 90 degrees on the left, indicating irritation of the sciatic nerve. Martin found no objective findings indicating herniation of a disc.

Martin's diagnosis on December 16 was lumbosacral strain. After reviewing the CAT scan ordered by Dr. Adams in July 1986, Martin concluded plaintiff's herniated disc was caused by the December 1985 accident. Martin stated with herniated discs, the signs of herniation do not always show up immediately and, therefore, it is difficult to

distinguish between muscle strain and herniation. Martin stated herniation occurs at the point of trauma or shortly thereafter. Martin stated plaintiff suffered a disruption of the annular fibers in the disc on December 14 and, as time passed, the herniation progressed. Martin stated the predominant symptom of herniation is back pain. Martin stated he referred plaintiff to Weinger in December 1986 after plaintiff's condition worsened after treatment by Dr. Adams.

On cross-examination by Koch, Martin stated plaintiff did not tell him about his preexisting back injuries at the first visit and Martin did not inquire about them until the second or third visit. Martin admitted a person can experience back pain without having a herniated disc. Martin also admitted that plaintiff's back injury in 1982 was significant because plaintiff was (1) removed from the accident scene by ambulance, (2) hospitalized for six days, and (3) upon his release, told to remain out of work for a period of time. Martin testified, with a reasonable degree of medical certainty, that jumping over fences as plaintiff does in his job could have caused trauma to plaintiff's lower back. Martin testified after plaintiff's surgery, plaintiff was told he could return to work but could not stoop or lift anything weighing more than 30 pounds. Martin stated that in August 1987, plaintiff was working out in a gym without difficulty and, in his opinion, plaintiff had minimal permanent impairment.

On redirect, Martin explained that plaintiff does have a permanent disability because, while he can perform his job, he suffers some discomfort in the performance. Martin also stated plaintiff's back injuries prior to 1985 were not significant to the diagnosis he made on December 16, 1985, because Dr. Holden testified plaintiff did not suffer any residual effects from those injuries. Martin explained that a response to the ankle jerk test enables a physician to determine if there is permanent damage in L-5, S-1 area of the back, the area where the plaintiff was operated on. Martin performed the test after plaintiff's surgery and found permanent damage.

On further cross-examination by Koch, Martin stated he was unaware plaintiff was bowling between December 1985 and July 1986. Martin also stated that bowling could cause rupture to a disc.

Dr. David Holden testified for Koch that he treated plaintiff in January 1982 for a back injury. Holden stated plaintiff was hospitalized for six days, then out of work for one week, but returned to work without difficulty on February 12, 1982. Holden diagnosed plaintiff's injury in 1982 as blunt trauma to the back. Holden also treated plaintiff in September 1977 for a back problem later diagnosed as low back strain. On cross-examination by plaintiff, Holden stated that

there were no residual effects from the two injuries and X rays taken in 1982 showed a normal lumbar spine. On redirect, Holden admitted that normal X rays do not provide a definitive diagnosis for herniated discs, whereas the MRI and CAT scan do. On further cross-examination by plaintiff, Holden stated he had no reason in 1982 to order special tests for a herniated disc.

Dr. Ernest F. Adams, a physical medicine and rehabilitation physician, testified by evidence deposition for Koch. Adams first treated plaintiff in January 1980 for low back and left hip pain, which plaintiff experienced after he fell on ice in November 1979. Adams' diagnosis was back strain. Adams gave plaintiff muscle relaxers, fitted him for a back brace, and gave him exercises to do. Adams treated plaintiff for that injury until February 1980 and did not see plaintiff again until July 1986, when plaintiff complained of pain in the lower back, radiating down his left leg. Adams reported plaintiff told him on July 8 that the pain got worse after jumping over obstacles and fences at work. Adams stated he was not given a history by plaintiff of his previous back injuries. Adams opined that due to the many back problems plaintiff had prior to December 1985, it would be impossible for any physician to determine which injury caused the need for the laminectomy in 1987. Adams ordered X rays in 1980, but not a myelogram, the diagnostic test for herniated discs in 1980. Adams testified the CAT scan test and MRI test for diagnosing herniated discs were not available in 1980.

On cross-examination by plaintiff, Adams reported that the 1986 CAT scan showed a bulge at discs L-3 and L-4, at L-4 and L-5, and calcification on L-3 and L-4. Adams stated the CAT scan also showed a large posterior left herniation of the disc at L-5, S-1. A straight-leg test establishes whether there is muscle guarding present in the back, and guarding can be unconsciously brought on by the test. Plaintiff's straight-leg test in 1980 was negative or normal. In 1986, the straight-leg test was positive at 75 degrees on the left and Adams stated this indicates a herniated disc. On redirect, Adams admitted he did not examine plaintiff after the December 1985 accident until July 1986 and, thus, did not know what the results of a straight-leg test in December 1985 would have been.

The parties stipulated that plaintiff's lost wages for his surgery and his recuperation in 1987 were $5,919.57. Plaintiff's medical bills for his back injury were admitted into evidence, but the parties agreed that only plaintiff's summary of all the medical bills would go to the jury. Plaintiff's medical bills totalled $8,423.22.

The jury returned a verdict for Mines and against plaintiff. The

jury returned an itemized verdict for plaintiff and against Harms and Koch and awarded $586 for past medical expenses. The jury further found Koch 60% negligent and Harms 40% negligent.

As a preliminary matter, we note Mines is a party to this appeal. Plaintiff raises issues on the damage award, but no issues regarding the jury's finding that Mines was not liable for plaintiff's injuries. Plaintiff states Mines is a party before this court because of the possibility we may reverse this cause for a new trial on all issues.

Plaintiff first argues the verdict is inconsistent because, while the jury found Harms and Koch were liable for the December 1985 accident, it only awarded $586 in past medical expenses, less than 10% of the total medical expenses proved at trial. Plaintiff also points out that the $586 figure includes Dr. Martin's total charges, $495, the majority of which involved Martin's charges for visiting plaintiff in the hospital after the laminectomy in 1987. Plaintiff maintains that because the jury awarded plaintiff these expenses, it had to also award damages for the hospital charges and surgery charges of the other physicians involved in this case. Thus, the verdict is inconsistent and plaintiff is entitled to a new trial on damages.

Harms and Koch argue the amount of damage award shows that the jury did not believe the December 1985 accident caused plaintiff's herniated disc and, therefore, the verdict is supported by the evidence. These defendants maintain the amount of damages awarded is the sum of Dr. Martin's charges, $495, and the charges for the emergency room at Methodist Medical Center on December 14, 1985, $121. The defendants refute plaintiff's argument regarding Dr. Martin's charges by pointing out that the jury only saw a *summary* of plaintiff's medical bills and, therefore, could have determined all Martin's charges were for treatment rendered plaintiff prior to July 1986, when the herniated disc was diagnosed. Further, the defendants contend that an incongruity in the award for medical expenses was of plaintiff's own making because plaintiff did not present itemized medical bills to the jury. With regard to other items of damage, the defendants argue that if the jury did not believe the accident caused plaintiff's back injury, then it could not award any damages for lost wages, disability, and pain and suffering. Further, Koch points out the jury was not required to accept the opinions of the medical experts and it could have found plaintiff and his witnesses were not credible.

Plaintiff, in his reply brief, points out that the itemized bills from all the doctors included information prejudicial to the plaintiff, *i.e.*, references to workers' compensation and insurance. Therefore, these bills were properly kept from the jury. Plaintiff also points out that

10

defendants in their closing argument argued to the jury that it could find that the accident only caused plaintiff to go to the emergency room and see Dr. Martin four times for back pain. If the jury so found, defendants argued, the jury should award plaintiff $121 for the emergency room and $309 for Martin's office visits from December 16, 1985, to January 9, 1986, or damages in the amount of $430. Plaintiff argues the award demonstrates the jury clearly did not accept plaintiff's theory of damages. Because the jury chose to award all of Martin's charges and the emergency room charges for December 14, 1985, the award is inconsistent because other charges for plaintiff's hospitalization should have been awarded as well.

The parties seem to agree that the damage award compensates plaintiff for all of Dr. Martin's charges and the emergency room charges on December 14, 1985.

■ The amount of a verdict is generally within the discretion of a jury, and a reviewing court will not order a new trial on damages unless the damages awarded are manifestly inadequate or it is clear that proved elements of damages have been ignored or the amount of the award bears no reasonable relationship to the loss suffered by the plaintiff. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4, 6.) Although a different award may be warranted by the evidence, the appellate courts are not to substitute their view for that of the jury, which heard the evidence, or for that of the trial judge, who considers and denies a party's post-trial motion. *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 516 N.E.2d 260.

■ A mathematical computation of medical bills incurred is a useful measure for the determination of the proper award of damages, but it does not automatically constitute a minimum level of recovery which is binding upon a jury and a court of review. (*Montgomery v. City of Chicago* (1985), 134 Ill. App. 3d 499, 503, 481 N.E.2d 50, 53.) When, for example, there is a genuine conflict as to the legitimacy of expenses incurred, the jury must determine the actual damages a plaintiff incurred. *Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 1044, 495 N.E.2d 141, 146; *Beckmeyer v. Alcala* (1985), 135 Ill. App. 3d 166, 173, 481 N.E.2d 893, 897-98.

■ Initially, plaintiff contends the jury verdict cannot be reconciled with the proof of damages and, therefore, it must be set aside. Plaintiff directs this court to an itemized bill for Dr. Martin's charges which was admitted into evidence. The bill shows that a substantial portion of Dr. Martin's charges was incurred when he visited plaintiff in the hospital after his surgery in January 1987.

Plaintiff's inconsistency argument is based on evidence the jury never saw. As both defendants point out, the itemized bill was not given to the jury by agreement of all parties. Moreover, no testimony breaking down the charges was presented to the jury. Thus, the only evidence the jury had of Dr. Martin's charges was the summary sheet prepared by the plaintiff. Defendants did argue during their closing arguments that the jury could find plaintiff only suffered a back strain from the December 1985 accident. If so, then plaintiff's measure of damages for back strain, according to Harms, was $430. This figure is incorrect, based on plaintiff's exhibits. But, even if it were correct, the jury awarded $156 more for past medicals.

Plaintiff relies on *Hinnen* for support for this argument. There, the plaintiff injured her neck in a car accident November 1979. Plaintiff was treated by one physician for whiplash from November 1979 to July 1980. During the same time, the plaintiff received physical therapy and remained out of work. Plaintiff again sought treatment for neck pain from another physician in May 1981. At this time, the second doctor diagnosed cervical strain and muscle spasms and concluded the November 1979 accident was the likely cause of plaintiff's neck pain. At trial in 1985, against the driver who hit her car in 1979, plaintiff submitted medical bills in the total amount of $2,047.22, claimed lost wages while receiving physical therapy in the amount of $1,343.82, and sought compensation for her pain and suffering. The jury returned a verdict of $2,500 for past medical expenses. The appellate court rejected plaintiff's argument that because the verdict was less than plaintiff's claims of special damages, it was inadequate as a matter of law. However, the *Hinnen* court found the verdict was irreconcilably inconsistent because the jury awarded the plaintiff the full amount of her past medical expenses, but nothing for pain and suffering. The following was noted by that court:

"If the jury believed that plaintiff had no compensable pain and suffering, its award of pain-related expenses was wholly unwarranted and contrary to the manifest weight of the evidence. Conversely, if it believed that plaintiff's pain and suffering were sufficiently serious to warrant expenditures for pain medication and physical therapy, its failure to award her compensation for that pain and suffering means that it disregarded a proven element of damages." *Hinnen*, 144 Ill. App. 3d at 1046, 495 N.E.2d at 147.

*Hinnen* is distinguishable. In *Hinnen,* there was a conflict as to the amount of lost wages and pain and suffering the plaintiff had, and the jury was free to not award any damages for these items. Further,

in *Hinnen,* there was no issue raised as to whether the jury was given itemized medical bills or a summary of the medical expenses.

The jury had two options in the present case: find the accident caused only a back strain; or find it caused the herniated disc. Because the jury did not see the itemized bills, it is reasonable that the jury concluded from the evidence that Dr. Martin's charges included only his services in treating plaintiff's back strain. Further, the jury was free to disbelieve the arguments of counsel during closing.

As to pain and suffering, lost wages, and disability immediately following the accident, plaintiff testified he did not miss any days of work and he continued to participate in bowling with his team from CILCO after the accident. The jury could have concluded that plaintiff's pain and suffering immediately following the accident was minimal and, therefore, insufficient to require and support an economic evaluation. (*Kelley v. Cross* (1967), 79 Ill. App. 2d 342, 223 N.E.2d 555.) The jury determines credibility of witnesses and the weight to be given their testimony. The jury may very well have disbelieved plaintiff's testimony concerning his injury, at the same time, by lenity, granting some recovery.

Plaintiff next argues the uncontradicted evidence established the December 1985 accident caused plaintiff's herniated disc and, therefore, the verdict is against the manifest weight of the evidence. Plaintiff points to the testimony of Drs. Martin and Caffery, where these doctors stated the accident could have caused plaintiff's disc to herniate.

A jury is not bound to accept the opinion of experts on an ultimate issue in a case. (*Harris v. Bethlehem Steel Corp.* (1984), 124 Ill. App. 3d 449, 464 N.E.2d 634.) Rather, the testimony of experts is judged by the same rules of weight and credibility which are applicable to other witnesses. (*Jones v. Consolidation Coal Co.* (1988), 174 Ill. App. 3d 38, 528 N.E.2d 33.) A jury cannot disregard uncontradicted testimony unless it is inherently unbelievable. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 315, 469 N.E.2d 183, 189.) However, if the testimony of a witness is contradicted by other testimony or circumstances, or impeached, then the jury decides the credibility and weight afforded such testimony. *Novey v. Kishwaukee Community Health Services Center* (1988), 176 Ill. App. 3d 674, 531 N.E.2d 427.

It is undisputed that plaintiff suffered some back pain after the accident on December 14, 1985; plaintiff sought treatment on December 14 and received pain killers and muscle relaxers; plaintiff returned to work on December 17, 1985, and did not miss a day of work

until January 1987 when the back surgery was performed; part of plaintiff's job as a meter reader for CILCO includes jumping or stepping over 3½- to 4-foot fences and other obstacles; plaintiff continued to bowl with the CILCO bowling team after the accident and before his surgery in January 1987; plaintiff discontinued any medical treatment in January 1986 and did not seek additional treatment for his back until July 1986; and, prior to 1985, plaintiff suffered various injuries to the same area of his back.

The medical testimony established that two physicians, Caffery and Martin, diagnosed plaintiff's injuries in December 1985 as lumbosacral strain, although Caffery stated it was possible plaintiff herniated a disc on December 14. Both doctors, however, were unaware of plaintiff's complete medical history. Martin changed his diagnosis to herniated disc after seeing the CAT scan taken in July 1986. Later, Martin admitted that plaintiff's activities as a meter reader could have caused the herniation. Martin also stated that he was unaware plaintiff continued to bowl between December 1985 and July 1986 and that bowling can cause a disc to herniate. The evidence in this case is not uncontradicted and the testimony of some witnesses was impeached. It was for the jury to determine the weight and credibility afforded the medical testimony in this case.

The cases plaintiff cites are inapposite. (*Giardino v. Fierke* (1987), 160 Ill. App. 3d 648, 513 N.E.2d 1168; *Kelty v. Wiseman Construction Co.* (1976), 38 Ill. App. 3d 808, 349 N.E.2d 108; *First National Bank v. Szwankowski* (1969), 109 Ill. App. 2d 268, 248 N.E.2d 517; *Gall v. Metropolitan Sanitary District* (1982), 109 Ill. App. 3d 502, 440 N.E.2d 973; *Blevins v. Inland Steel Co.* (1989), 180 Ill. App. 3d 286, 535 N.E.2d 972.) In all these cases, the evidence was either uncontradicted or the circumstances and type of injuries were manifestly different.

Plaintiff next argues he was prejudiced by the introduction of evidence of his prior back injuries because defendants failed to connect these injuries to any injury plaintiff suffered from the December 1985 accident. Plaintiff contends the trial court further prejudiced plaintiff's case by failing to instruct the jury that defendant had the burden of establishing a causal relationship between the prior back injuries and plaintiff's herniated disc.

Defendants maintain the evidence of prior back injuries was properly admitted without any showing of any causal relationship between them and the December 1985 injury and, further, medical testimony is not needed to introduce evidence of prior injuries.

In his reply brief, plaintiff argues there was no evidence showing

14

the prior injuries, which were diagnosed as back strain, involved injury to a disc. Plaintiff argues there is a substantial difference between the back strain and herniated disc and, therefore, the prior injuries do not involve the same part of the body. Plaintiff also argues defendants' reliance on *O'Brien v. Thomas Steel Corp.* (1989), 181 Ill. App. 3d 901, 538 N.E.2d 1162, is misplaced and the correct authority for this issue is *Marut v. Costello* (1964), 53 Ill. App. 2d 340, 202 N.E.2d 853, *aff'd* (1966), 34 Ill. 2d 125, 214 N.E.2d 768.

■ Some courts have held that evidence of a prior injury is admissible if a causal relationship between the injuries is shown *or* where the injury involved the same area of the body. (*O'Brien*, 181 Ill. App. 3d 901, 538 N.E.2d 1162; *Elberts v. Nussbaum Trucking, Inc.* (1981), 97 Ill. App. 3d 381, 422 N.E.2d 1040; *Palsir v. McCorkle* (1966), 70 Ill. App. 2d 425, 216 N.E.2d 682; *Caley v. Manicke* (1961), 29 Ill. App. 2d 323, 173 N.E.2d 209, *rev'd on other grounds* (1962), 24 Ill. 2d 390, 182 N.E.2d 206; see also *Falkenthal v. Public Building Comm'n* (1982), 111 Ill. App. 3d 703, 444 N.E.2d 498; *Vandermyde v. Chicago Transit Authority* (1979), 73 Ill. App. 3d 984, 392 N.E.2d 48; *Intrater v. Thomas* (1977), 54 Ill. App. 3d 709, 369 N.E.2d 1339; *Hoffman v. Wilson* (1965), 60 Ill. App. 2d 396, 208 N.E.2d 607.) This rule is based on the maxim that evidence which is relevant to an issue in controversy is admissible. (*Caley*, 29 Ill. App. 2d at 330, 173 N.E.2d at 212.) In a personal injury action, such evidence is relevant to two ultimate issues in the action: whether defendant's negligence was the proximate cause of plaintiff's injury and the extent of plaintiff's damages.

It has been held that no medical testimony is needed to introduce the existence of a prior injury to the same area of the body. (*Vandermyde*, 73 Ill. App. 3d 984, 392 N.E.2d 48.) A causal connection between prior injuries and present injuries is required only where the injuries do not involve the same area of the body. *Rehak v. City of Joliet* (1977), 52 Ill. App. 3d 724, 367 N.E.2d 1070; *Tate v. Coonce* (1981), 97 Ill. App. 3d 145, 421 N.E.2d 1385; *Caley*, 29 Ill. App. 2d 323, 173 N.E.2d 209; *Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768.

Plaintiff's prior injuries involve the same area of his body: the lower back. Plaintiff's argument that the prior injuries to the lower back and the herniation of a disc in the lumbosacral area of the back is not the same area of the body is wholly unsupportable. Moreover, this argument was raised for the first time in plaintiff's reply brief. Thus, the issue will not be considered. 107 Ill. 2d R. 341(e)(7); *Dunn v. Baltimore & Ohio R.R. Co.* (1987), 162 Ill. App. 3d 97, 515 N.E.2d 1027.

As to whether a connection must be established between plaintiff's prior injuries and the injury in 1985, a review of the case law is in order. The first case addressing the issue, *Caley*, involved a whiplash injury. On cross-examination of the plaintiff in *Caley*, defendant elicited evidence that plaintiff had been involved in similar accidents before and after the accident then before the court. No testimony on what specific parts of the body were injured in the accidents was introduced. The court stated that because no nexus between the current injury and other injuries was introduced, the evidence was properly stricken as irrelevant. Later, in *Marut*, the supreme court stated that where the prior injury involved the cervical spine and the later injury, the lower back, without any causal connection shown, the introduction of evidence of the prior injury was reversible error.

After *Marut*, which clearly involved injuries to two different parts of the body, the Second District Appellate Court in *Palsir* found *Marut* distinguishable in a case involving prior injuries to the same area of the body (right flank). Because the prior injuries in *Palsir* involved the same area of the body, the evidence on prior injuries was admissible without further proof of connection to the present injuries.

Since *Palsir* and *Marut*, the appellate court has addressed the issue reaching different and sometimes irreconcilable results. The second district in *Hoffman* (60 Ill. App. 2d 396, 208 N.E.2d 607) found evidence of prior injuries *material* to the case, cited *Caley*, and concluded defendant could impeach the plaintiff with such evidence. In *Scheck v. Evanston Cab Co.* (1968), 93 Ill. App. 2d 220, 236 N.E.2d 258, relying on *Marut* and *Caley*, the first district held a causal connection was required before plaintiff's prior neck injury could be introduced one year later in a personal injury action which involved neck injuries. In 1979, in *Vandermyde*, the first district narrowed the rule and stated competent testimony, though not necessarily medical testimony, is required to connect a prior injury to *another* part of the body to the injury before the court. However, in 1981 in *Elberts*, the first district stated the rule to be that evidence of prior injuries is admissible if a causal relationship is shown (*Scheck*, 93 Ill. App. 2d 220, 236 N.E.2d 258; *Caley*, 29 Ill. App. 2d 323, 173 N.E.2d 209), or where the injuries involved the same part of the body (*Palsir*, 70 Ill. App. 2d 425, 216 N.E.2d 682). *Elberts* was quoted with approval in *Tisoncik v. Szczepankiewicz* (1983), 113 Ill. App. 3d 240, 446 N.E.2d 1271. In 1983, in *Falkenthal*, the first district embraced the rule that evidence of prior injuries to the same area of the body is admissible at trial concerning later injuries.

The *O'Brien* case is the latest case on this issue. Relying on

*Palsir, Elberts, Vandermyde,* and *Falkenthal,* the *O'Brien* court stated that evidence of prior injuries was admissible where the injury involved the same area of the body. In *O'Brien,* the prior injury was L-5 disc syndrome and the present injury was herniated discs at L-4 and L-5 levels of the lower back. Evidence of the prior injury was admissible without any medical evidence connecting the two injuries or any evidence of a causal connection. The defendant in *O'Brien* was not allowed to present *any* evidence of prior injuries at trial. Therefore, the cause in *O'Brien* was remanded for a new trial.

We note the *O'Brien* holding is in contrast to an earlier third district case, *Greim v. Sharpe Motor Lines* (1968), 101 Ill. App. 2d 142, 242 N.E.2d 282, which plaintiff relies on. The *Greim* court stated a defendant seeking to establish that a prior accident was the cause of present injuries had the burden of proof on this issue, as it was an affirmative defense. Further, the *Greim* court, citing *Marut* and *Caley,* noted that defendant had to produce "competent medical proof that a reasonable connection existed" between the prior injury and the present injury. (*Greim,* 101 Ill. App. 2d at 149, 242 N.E.2d at 285.) The prior injury in *Greim* was a whiplash injury to the neck; the present injury in that case was traumatic myositis or strain to the neck muscles.

We conclude *O'Brien* provides the rule on this issue. Here, the injuries involve the same area of the body and, thus, evidence of plaintiff's prior injuries was admissible without any independent showing of causal connection.

■ Plaintiff also argues defendant had the burden of proving a causal relationship between the prior injury and the herniated disc and the trial court erred in not giving plaintiff's instructions on this issue.

Initially, we note plaintiff cites no authority for his argument on defendant's burden of proof. Thus, the waiver rule is applicable. (*People ex rel. Daley v. Warren Motors, Inc.* (1986), 114 Ill. 2d 305, 500 N.E.2d 22.) On the merits, we acknowledge two cases which have addressed this issue. In *Greim,* the court stated that where defendant's theory was that the present injury was caused by a prior accident, defendant had the burden of proof on the issue. In *Greim,* on direct examination, plaintiff testified at length regarding a prior accident where similar injuries were sustained. In an earlier case, *Hoffman* (60 Ill. App. 2d 396, 208 N.E.2d 607), the court stated the evidence of prior injuries is not always an affirmative matter and distinguished *Marut.* In *Hoffman,* the plaintiff testified on direct that he never had any of the symptoms complained of until after the latest accident. On

cross-examination, the defendant examined plaintiff on the occurrences before the accident. Defendant laid a foundation for his impeachment of defendant during cross-examination and later offered an impeaching witness in his case in chief. The *Hoffman* court held this was proper and cited *Caley*. That court found *Marut* distinguishable because, in *Marut*, the plaintiff did not deny any prior injuries.

In the case presented, plaintiff denied any back injuries or pain in the three years previous to the 1985 accident. Defendant elicited on cross-examination of plaintiff evidence of back injuries plaintiff suffered in 1977, 1979, 1981, and 1982. In part, defendant's cross-examination sought to impeach plaintiff's testimony on the condition of his back prior to the December 1985 accident. Koch presented Dr. Adams as a witness and elicited some testimony on direct of Adams regarding plaintiff's 1979 back injury. Koch also presented Dr. Holden as a witness who testified on direct regarding plaintiff's 1979 and 1982 back injuries. These two physicians testified plaintiff recovered from the previous injuries without any residual effect. This case more closely resembles *Hoffman*, where evidence of prior injuries was held to not always constitute an affirmative matter.

■ Plaintiff next argues defendant's questioning of Drs. Caffery, Adams, and Holden was improper and prejudicial. Harms argues the questioning was proper because it went to the weight of the expert testimony and the credibility of the plaintiff. Koch argues the questions were proper and, even if they were found improper, some of the objections plaintiff now raises are waived because they were not raised at trial.

Initially, plaintiff contends defendant's questioning of Caffery regarding plaintiff's prior injuries was improper, and the use of the term "acute" in the following question to Caffery was prejudicial because it assumed facts not in evidence:

> "Q. Were you aware that the acute diagnosis that was made of a herniated disc was only made after this patient complained to Dr. Adams that his hip and lower back became worse after he had been jumping up and over fences and obstacles in the course of his work?"

This question was asked during cross-examination of Caffery after Caffery testified on direct that plaintiff's symptoms on December 14, 1985, could be consistent with an "acute disc herniation." Plaintiff argues this question assumed an *acute* herniated disc was diagnosed after July 1986. The evidence established a herniated disc was diagnosed after July 1986, but not a diagnosis of *acute* herniation.

Plaintiff's argument acknowledges that this question operated to

impeach Caffery's testimony. That is not improper in a case such as this where plaintiff is attempting to connect an accident with a herniated disc diagnosed more than seven months later. Plaintiff also acknowledges that defense counsel are entitled to draw some inferences from this question, which also refers to plaintiff jumping over fences and obstacles at work. Plaintiff denied telling Dr. Adams that the pain got worse because he was jumping over fences. It was for the jury to resolve the conflicting testimony. We find no error.

Plaintiff also raises an issue on the following question posed to Caffery on cross-examination:

"Q. Were you aware that he had injured his low back in 1977 and had x-rays taken where there was concern about irritation of a sciatic nerve? Were you aware of that in 1979 he slipped on the ice and injured his tailbone and left buttocks and that he saw Dr. Palmer and Dr. Adams as a result of that and that he had pain in his left lumbosacral area, pain with sitting, radiating pain in his left hip and that he at that time wore a support on his back and wearing his back brace for some time and that he was under treatment by various doctors thereafter? Are you aware that in 1982 he slipped on the ice again, fell on his back and he had injury to his low back, he saw Dr. Holden at the Medical and Surgical Clinic and again there was tenderness found in the lumbosacral musculature and Dr. Holden about two weeks later did return him to work and saw him after he returned to work on one additional occasion? Are you aware or were you aware either from the patient or from the plaintiff's attorney of these preexisting problems with this man's back prior to my telling you of it right now?

A. No."

Plaintiff argues the innuendo from this question, that plaintiff's attorney and plaintiff failed to tell Caffery of plaintiff's preexisting back injuries prior to trial, was improper and cast the plaintiff in a poor light with the jury. The trial court has broad discretion in controlling cross-examination and reversal will only result where such discretion has been clearly abused and the abuse materially affected results of the trial. (*Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 444 N.E.2d 220.) The evidence established that plaintiff did not give a complete medical history to Caffery when he went to the emergency room on December 14. It was proper cross-examination to establish plaintiff's lack of credibility.

■ Plaintiff also argues the questioning of Dr. Adams, which included discussions of plaintiff's prior back injuries, was improper. Spe-

cifically, plaintiff objects to the following hypothetical question posed to Adams on cross-examination:

"Q. Doctor, if you assume that Truman Elliott had a laminectomy in January, 1987, and further assume that he had the problems that you saw him for in 1980, and if you assume further that while working for [CILCO] in January, 1982, he slipped on ice and fell across concrete steps on his low back, and if you assume that he went into a hospital for six days as a result of that incident and had problems with his low back in 1982 as a result of this second accident that we know of, and if you assume further that he had an accident in November, 1985, and if you assume further that he had additional traumas from jumping over obstacles and over fences, would it be possible for any doctor to determine which one of these particular injuries or accidents might have been the proximate cause of the low back surgery that occurred in January of 1987?

A. No."

This question was posed to establish before the jury that because of plaintiff's pre-1985 back injuries and the possibility of other traumas between December 1985 and July 1986, it would be difficult for any physician to pinpoint the event which caused plaintiff's herniated disc. This question is relevant to plaintiff's credibility and to the weight to be given expert testimony. Further, evidence that plaintiff could have suffered additional traumas to his back due to his activities at work and while bowling between January and July 1986 was introduced.

Plaintiff next argues defendants' closing argument that the December 1985 accident did not cause the herniated disc was not proper because no evidence was presented that another event caused the herniation. Defendants contend plaintiff waived any objection to their closing argument because no objection was raised. On the merits, defendants maintain their argument was based on reasonable inferences that could be drawn from the evidence. In his reply brief, plaintiff argues he preserved any error during closing argument by filing a motion *in limine* immediately prior to the commencement of closing arguments in this case. Further, plaintiff contends further objection during closing argument would have been useless since it was clear the trial judge accepted defendants' theory of the case.

An attorney must confine his closing arguments to those matters that are in evidence. (*Ryan v. Blakey* (1979), 71 Ill. App. 3d 339, 389 N.E.2d 604.) However, in arguing a case to the jury, an attorney is allowed broad latitude in drawing reasonable inferences and conclusions from the evidence. *Friedland v. Allis Chalmers Co.*

(1987), 159 Ill. App. 3d 1, 511 N.E.2d 1199.

■■ The record shows plaintiff filed a motion *in limine* to prohibit defendant from arguing that the prior injuries could have caused the herniated disc. That motion was denied. Arguably, any further objection would have been repetitive and would not have served any purpose, since the trial judge was aware of plaintiff's objection and the basis for it. (*Burger v. Van Severen* (1963), 39 Ill. App. 2d 205, 215, 188 N.E.2d 373, 378.) We will address the merits of plaintiff's claim of error.

The trial judge, in denying plaintiff's motion *in limine* on this issue, reasoned defendants could infer from the evidence that some other event could have caused the herniation. Further, the trial judge stated the jury would be free to disbelieve Dr. Martin, who linked the accident in December 1985 to the herniated disc.

A review of the closing arguments establishes defendants' arguments were based on proper inferences that could be drawn from the evidence. Koch argued (1) Dr. Martin did not have the complete medical history when he made his diagnosis; and (2) the types and extent of plaintiff's prior injuries and a possible relationship to plaintiff's herniated disc were relevant. This argument was based on the evidence.

Dr. Martin testified plaintiff's 1982 back injury was significant. Harms did not mention plaintiff's prior back injuries during his closing, but argued the jury could infer from the evidence that something happened between January and July 1986 to cause the herniated disc. This argument is based on testimony of Dr. Martin that bowling, which plaintiff engaged in during this time, or jumping over obstacles or fences, which plaintiff told Adams he was doing on occasion at work, could have caused the herniation of the disc. We find no error.

■■ Plaintiff also raises an objection to the following statement made during closing by the attorney for Koch:

"And we, as defense attorneys, cannot talk to the treating doctors before we put them on the stand, so all we can do is put them up there."

Plaintiff also did not raise an objection to this statement; thus, any error is waived. (*Kenny Construction Co. v. Hinsdale Sanitary District* (1982), 111 Ill. App. 3d 690, 444 N.E.2d 510.) On the merits, the above statement is a correct statement of the rule that defense counsel may not have *ex parte* communications with treating physicians. (*Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952.) Taken in context, Koch was referring to the fact that when he was examining Dr. Holden, the doctor referred to his own

records to find the diagnosis he made for plaintiff's 1982 back injury.

Plaintiff also raises an objection to Koch's references to "an association between plaintiff's lawyer and Dr. Martin." Plaintiff argues this statement suggests plaintiff was manipulating the evidence. Plaintiff did not raise an objection to this statement at trial and, therefore, it is waived. (*Kenny*, 111 Ill. App. 3d 690, 444 N.E.2d 510.) On the merits, it is apparent the statement was referring to the fact that Dr. Martin testified he was never told by anyone what type of accident the parties were involved in and, presumably, plaintiff's attorney did not tell him what type of accident the December 1985 accident was. The remark was a comment on Dr. Martin's credibility as an expert witness in this case.

Plaintiff also contends Harms improperly argued plaintiff did not call Dr. Adams as a witness because plaintiff did not want Adams' testimony regarding what plaintiff told Adams before the jury. Plaintiff argues this prejudiced his case and was clear error because Adams' testimony was presented by evidence deposition and Adams was available to all parties.

■■■ ■ It is error to argue that an inference may arise from a party's failure to call a witness where the witness is available to all parties. (*Piano v. Davison* (1987), 157 Ill. App. 3d 649, 510 N.E.2d 1066.) The supreme court has held the conduct of closing arguments must be left largely to the sound discretion of the presiding judge. (*Chicago City Ry. Co. v. Creech* (1904), 207 Ill. 400, 69 N.E. 919.) As further stated in *Creech*:

> "[I]t [is] for [the trial judge] to say, under all the circumstances of the case and in view of the remarks preceding the argument objected to and the temper and character of the jury, whether or not a new trial should be granted for the misconduct of counsel by way of improper argument to the jury." (*Creech*, 207 Ill. at 403, 69 N.E. at 920.)

Here, Adams was presented to the jury by evidence deposition. The evidence deposition states Adams was called as a witness for Koch. Plaintiff objected to the above-referenced statement because Harms incorrectly referred to Dr. Martin and not Dr. Adams as defendants' witness. The objection was sustained and no further reference to this fact was mentioned during closing. We discern no prejudice suffered by plaintiff from this remark.

Finally, plaintiff argues it was error to give the short form of Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1990) (IPI Civil 3d), which reads as follows:

> "When I use the expression 'proximate cause,' I mean any

cause which, in natural or probable sequence, produced the injury complained of."

Plaintiff tendered the long form of IPI Civil 3d No. 15.01, which reads as follows:

"When I use the expression 'proximate cause,' I mean any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

Plaintiff argues because the defendants' theory of defense was that some prior injury caused plaintiff's herniated disc, it was critical for the jury to know that, even if it believed defendants' theory, the jury would still have to find plaintiff proved his case if the other injury *and* the December 1985 accident together caused the herniated disc.

Defendants note the comment on the IPI Civil 3d No. 15.01, Comment, at 15—3 through 15—5, states the long form of this instruction should only be used when there is evidence that something or the acts of someone other than the defendant were the proximate cause of the injury. Alternatively, defendants contend plaintiff raises a ground of error for this instruction which was not raised at trial and, therefore, the waiver rule should be applied to this issue. Defendants also suggest plaintiff could have submitted IPI Civil 3d No. 30.01 (aggravation of preexisting condition), and IPI Civil 3d No. 12.05 (no defense that something else also cause of injury), along with the short form of IPI Civil 3d No. 15.01.

In determining the propriety of a submitted instruction, the test is whether the instructions taken together fully and fairly apprise the jury of relevant principles. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 723, 457 N.E.2d 85, 93.) The *Bass* court held when there is no evidence of a third party's negligence, the long form of IPI Civil No. 15.01 is inapplicable. (Illinois Pattern Jury Instructions (IPI), Civil, No. 15.01 (2d ed. 1971).) Moreover, where there is no evidence that a third party was negligent, the giving of a long form of instruction No. 15.01 can be confusing for the jury. *Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 456 N.E.2d 882.

In *Dolan v. Crammond* (1979), 71 Ill. App. 3d 289, 389 N.E.2d 206, the court stated the proximate cause instruction, IPI Civil 2d No. 15.01, deals with the conduct that produces plaintiff's injuries *at the time* of the incident involved in the action. If there is evidence of prior or subsequent injuries, the relevance of this evidence is dealt with by giving IPI Civil Nos. 30.01 and 12.05.

██ During the instruction conference, plaintiff argued for the long form of IPI Civil 3d No. 15.01 because of the number of defendants and the manner in which the accident on December 14, 1985, occurred. On appeal, plaintiff argues this is a complicated medical-causation case because of the prior injuries evidence and, therefore, the long form should have been given. The jury was given the short form of IPI Civil 3d No. 15.01 and instructed to apportion damages *among the defendants* should it find for plaintiff on the liability issue. The jury was not instructed that prior injuries could be the proximate cause of plaintiff's injuries or to consider the actions of anyone other than the defendants. Moreover, a review of the language used in the instruction itself demonstrates that it refers to other *concurrent* causes of an injury. Therefore, plaintiff's contention that the long form of this instruction is proper in this case, which involves evidence of prior injuries, is not tenable. Viewing the instructions as a whole, we find no error in the giving of the short form of IPI Civil 3d No. 15.01.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.